Affirmed and Memorandum Opinion filed February 13, 2007








Affirmed and Memorandum Opinion filed February 13, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00855-CR

____________

 

MARCUS PAUL LAREDO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 232nd
District Court

Harris County, Texas

Trial Court Cause No. 1028547

 



 

M E M O R A N D U M   O P I N I O N

Appellant Marcus Paul Laredo was found guilty by a jury of
aggravated robbery.  The jury assessed punishment, enhanced by one previous
felony conviction, at thirty years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  In nine
issues, appellant contends the evidence is legally and factually insufficient
to show that he used or exhibited a firearm in the commission of the offense,
and the trial court erred in admitting appellant=s custodial
statement to police in violation of federal and state constitutional rights and
state statutes.  We affirm.

Factual
Background

On April 13, 2003, Abdul Bawanie was working at a K.T.
Foods convenience store in Harris County when he was robbed at gunpoint by two
men who entered the store demanding money.  Both men were dressed in black and
wore black masks over their faces.  One wore a black t-shirt with the word Apolice@ emblazoned on
it.  The man in the Apolice@ t-shirt carried a
shotgun and the other man carried an Airon-like@ weapon.  

The men ordered Bawanie to lie down on the floor and, as
they pushed him down, one of the men struck him with the butt of the shotgun. 
The men then demanded that Bawanie open the cash register.  After taking the
money in the register, one of the men searched for and found beneath the
counter a cigar box containing more money.  The men left with between six and
seven hundred dollars.  During the robbery, Bawanie feared for his life.  

The robbery remained unsolved for over a year when, in
September 2004, Evelia Roman called the police to reveal appellant=s participation in
the robbery.  Roman, a dancer at a nightclub, spoke to Officer Chappell in the
robbery division of the Houston Police Department.  She directed Officer
Chappell to the convenience store and told him that during the robbery
appellant wore a black shirt with Apolice@ written on it. 
Roman admitted to Officer Chappell that she was providing this information
because she was angry and upset with appellant because he left her for another
woman.[1] 
Eventually, Roman also admitted that she drove one of the cars used in the
robbery and used a walkie-talkie to communicate with appellant and the other
masked man inside the store.  At some point later, Roman was arrested for her
participation in the crime, and she pleaded guilty to aggravated robbery of the
K.T. Foods store.








On September 23, 2004, Officer Chappell and Officer
Rodriguez, another officer from the robbery division of the Houston Police
Department, learned appellant=s whereabouts and, when appellant
appeared, he was arrested.[2] 
Appellant consented to a search of the car he was driving, and inside the
police found two walkie-talkies, a police scanner, and a book of frequencies
for the scanner.  The next day, Officer Rodriguez and another officer
interviewed appellant.  Appellant agreed to waive his rights and give a
videotaped statement. 

At appellant=s trial, the jury
was shown a videotape from the convenience store=s security camera
that filmed the robbery.  Roman identified appellant as the robber wearing the
black Apolice@ t-shirt who
struck Bawanie.  Although their faces were covered, appellant and his
accomplices could be seen using walkie-talkies to communicate with each other. 
At one point, Roman informed appellant by walkie-talkie that someone was
entering the store.  Roman admitted at trial that she was acting as a lookout
and that it was her voice heard on the videotape.  She also acknowledged they
had a gun, and a shotgun can be seen on the videotape.  Additionally, the
videotape reveals one of the robbers referring to the other as AMarcus@ during the
robbery. 








The jury also saw appellant=s videotaped
statement, which the court admitted after conducting a Jackson v. Denno[3]
hearing and overruling appellant=s objection that
the statement was involuntarily given.  In the statement, appellant confessed
to planning and participating in the K.T. Foods robbery.  He also admitted
Roman=s involvement in
the robbery.  He explained how he used a police scanner and walkie-talkies to
ensure that the robbery was successful.  Appellant denied entering the store or
carrying the shotgun, although he described the shotgun by brand as a
Mossberg.  Appellant named his accomplices as Roman, George Gomez, and Raul,
whose last name he did not know.  Appellant stated that Raul picked the
location because he knew that the store kept cash in a cigar box under the
counter.  Appellant described Bawanie as Aa skinny, old,
withered man@ who Alooked like no problem@ for them.  He
also admitted receiving about $200 from the robbery after dividing the
proceeds.[4]


The jury found appellant guilty of aggravated robbery.
Following the punishment trial, the jury found the allegations of the
enhancement paragraph true and assessed appellant=s punishment at
thirty years in the Texas Department of Criminal Justice, Institutional
Division.  The trial court sentenced appellant accordingly.  This appeal
followed. 

I.        The
Evidence is Legally and Factually Sufficient to Show Appellant Used or
Exhibited a Firearm in the Commission of the Charged Offense.

In his first and second issues, appellant contends the
evidence is legally and factually insufficient to show that he used or
exhibited a firearm in the commission of the charged offense. 

A.      Legal
Sufficiency

1.       Standard
of Review








Evidence is legally insufficient if, when viewed in a light
most favorable to the verdict, a rational jury could not have found each
element of the offense beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Jones v. State, 944 S.W.2d 642, 647 (Tex.
Crim. App. 1996).  The jury is the exclusive judge of the credibility of
witnesses and of the weight to be given testimony, and it is also the exclusive
province of the jury to reconcile conflicts in the evidence.  Jones, 944
S.W.2d at 647.  Thus, when performing a legal-sufficiency review, we may not re‑evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the fact finder.  Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim.
App. 1999).  We must resolve any inconsistencies in the testimony in favor of
the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).


2.       Application
of Law to Facts

Appellant was charged with aggravated robbery of the
complainant by committing robbery and using and exhibiting a deadly weapon in
the course of the offense.  See Tex.
Penal Code '' 29.02, 29.03.  Appellant contends the
evidence is legally insufficient because (1) the complainant, Bawanie, could
not identify appellant as the person in the store carrying a firearm, (2) Roman=s accomplice
testimony was not credible because she accused appellant of being one of the
robbers even though she denied being in the store, and her motives were suspect
because she was Aa woman scorned,@ (3) appellant, in
his statement, denied ever entering the store, and (4) there were no firearms
found in the search of the car appellant was driving and no fingerprint
evidence linking him to any of the items recovered from the car, which was not
his.  

However, in this case, the charge authorized the jury to
find appellant guilty as either a principal or a party to the offense.  See Tex. Penal Code '' 7.01,
7.02(a)(2).  As a party to the offense, the jury could have concluded that
appellant was the robber who displayed the Airon-like@ weapon or that he
was outside acting as a lookout.  In either scenario, appellant would still be
guilty as a party to using or exhibiting a deadly weapon.  See Rabbani
v. State, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992) (AThe principle is
well‑established that when the jury returns a general verdict and the
evidence is sufficient to support a guilty finding under any of the allegations
submitted, the verdict will be upheld.@).  In determining
whether a defendant participated as a party, the jury may look to events that
occurred before, during, or after the offense, and may rely on acts showing an
understanding and common design.  Ransom v. State, 920 S.W.2d 288, 302
(Tex. Crim. App. 1997) (op. on reh=g).  








In his statement, appellant admitted to planning the
offense, providing the walkie-talkies used, and listening to the police scanner
to alert the other participants to any police activity during the robbery.  He
also admitted knowing that one of the participants would have a shotgun during
the robbery, and he admitted receiving proceeds from the robbery. Moreover,
appellant linked himself to the walkie-talkies and other items found in the car
when he discussed using these items to carry out the robbery.  These admissions
are legally sufficient to support his conviction as a party to the offense.

Additionally, Bawanie testified that one of the robbers
carried a shotgun, and the shotgun can be seen in the videotape.  Roman
testified that it was appellant who held the shotgun, who struck Bawanie, and
who was referred to as AMarcus@ by the other
person on the videotape.  Roman=s credibility was for the jury to
determine, and they could have accepted her testimony as truthful. 

Thus, the testimony of Bawanie and Roman, corroborated by
appellant=s confession and the surveillance video, was sufficient
for any rational trier of fact to find the essential elements of the offense
beyond a reasonable doubt.  See Jackson, 443 U.S. at 319.  We therefore
overrule appellant=s first issue.

B.      Factual
Sufficiency

1.       Standard
of Review

When conducting a factual‑sufficiency review, we view
all of the evidence in a neutral light.  See Cain v. State, 958 S.W.2d
404, 408 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 134
(Tex. Crim. App. 1996).  We may set the verdict aside if: (1) the evidence is
so weak that the verdict is clearly wrong and manifestly unjust; or (2) the
verdict is against the great weight and preponderance of the evidence.  Watson
v. State, 204 S.W.3d 404, 414B15 (Tex. Crim.
App. 2006) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000)).  However, while we may disagree with the jury=s conclusions, we
must exercise appropriate deference to avoid substituting our judgment for that
of the jury, particularly in matters of credibility.  Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005); see also Watson, 204 S.W.3d
at 414 (stating that a court should not reverse a verdict it disagrees with,
unless it represents a manifest injustice even though supported by legally
sufficient evidence).  Finally, we must discuss the evidence that, according to
appellant, most undermines the jury=s verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).








2.       Application
of Law to Facts

In this issue, appellant=s primary focus is
on Roman=s testimony
against him, which he asserts is unreliable and not worthy of belief.  First,
appellant contends Roman, who was awaiting sentencing for her role in the K.T.
Foods robbery, Ashaded@ her testimony to
gain an advantage from the State at her own sentencing.  However, Roman
testified at appellant=s trial that she was not promised anything
in exchange for her testimony against appellant, and there is no evidence to
the contrary.  

Next, appellant contends that Roman identified appellant as
one of the robbers because he had left her for another woman and she was very
upset about that and wanted to punish him.  Appellant also contends that it is
incredible that Roman could not identify the other robber seen in the videotape
or that she could not recall other details about the day of the robbery. 
Without Roman=s testimony, appellant contends, the evidence cannot
support the verdict because Bawanie could not identify appellant as one of the
robbers, and appellant admitted acting as a lookout only.  Further, appellant
points out, the policed failed to recover any fingerprints from the items found
in the car appellant was driving, and the car was ultimately found to be
registered to someone else.  Appellant urges that the proof of appellant=s guilt is so
obviously weak as to undermine confidence in the jury=s verdict, citing Johnson,
23 S.W.3d at 11, and Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim.
App. 2004), overruled in part by Watson v. State, 204 S.W.3d 404
(Tex. Crim. App. 2006). 

Appellant=s claim of factual insufficiency rests
largely upon Roman=s credibility.  However, we must employ
appropriate deference so that we do not substitute our judgment for that of the
fact finder.  See Drichas, 175 S.W.3d at 799.  We are not free to
reverse a jury=s decision simply because we may disagree with the
result.  See Cain, 958 S.W.2d at 407.  








Most recently, the Court of Criminal Appeals overruled in
part Zuniga, one of the cases on which appellant relies, to the extent
it could be interpreted to read that an appellate court=s fact
jurisdiction includes the ability to overturn a jury verdict and remand for a
new trial when the greater weight and preponderance of the evidence actually
favors conviction.  See Watson, 204 S.W.3d at 417.[5] 
As the Watson court instructs, Ait is not enough
that the appellate court harbor a subjective level of reasonable doubt to
overturn a conviction that is founded on legally sufficient evidence.@  Id. 
Further, an appellate judge Acannot conclude that a conviction is >clearly wrong= or >manifestly unjust= simply because,
on the quantum of evidence admitted, he would have voted to acquit had he been
on the jury,@ nor can he Adeclare that a
conflict in the evidence justifies a new trial simply because he disagrees with
the jury=s resolution of
that conflict.@  Id.  Instead, the appellate court must first
be able to say, with some objective basis in the record, that the great weight
and preponderance of the evidence contradicts the jury=s verdict before
it is justified in exercising its appellate fact jurisdiction to order a new
trial.  Id.  








With the Court=s instruction in
mind, we turn to the evidence presented at trial.  Roman was an accomplice
witness.  The trial court instructed the jury that it could not convict
appellant upon her testimony unless the jury first believed that (1) Roman=s testimony was
true and that it showed appellant was guilty as charged in the indictment, and
(2) there was other evidence outside of Roman=s testimony tending
to connect appellant with the offense committed.[6] 
The surveillance videotape corroborated Roman=s identification
of appellant as one of the participants in the robbery, because one of the
robbers can be heard referring to the other as AMarcus.@  Roman testified
that she used a walkie-talkie to communicate with the robbers, and on the
videotape the robbers can be seen communicating with walkie-talkies.  Roman
also knew about the black Apolice@ t-shirt that can
be seen on the videotape.  

Additionally, appellant, in his statement, acknowledges
Roman=s role in the
robbery. And although appellant denied being in the store during the robbery,
he admitted to planning and participating in the robbery.  Thus, the
surveillance videotape and appellant=s own statement
sufficiently corroborated Roman=s testimony for the jury to conclude she
was truthful and appellant participated in the robbery.  

We also reject appellant=s claim that the
evidence is insufficient because the complainant was unable to identify him. 
If other evidence shows that a defendant was the perpetrator of a criminal
offense, the complainant=s failure to positively identify the
defendant in court does not make the verdict improper.  Conyers v. State,
864 S.W.2d 739, 740 (Tex. App.CHouston [14th Dist.] 1993, pet. ref=d).  Finally,
appellant=s claim that Ano credible
evidence@ links appellant
to the walkie-talkies and other items found in the vehicle he was driving is
belied by appellant=s own statement, in which he discusses
using the items in carrying out the robbery.

Viewing the evidence in a neutral light, it was not so weak
that the verdict is clearly wrong and manifestly unjust.  Moreover, we cannot
say that the great weight and preponderance of the evidence contradicts the
jury=s verdict.  See
Watson, 204 S.W.3d at 417.  We therefore overrule appellant=s second issue.  

II.       The Trial
Court Did Not Err by Admitting Appellant=s Custodial
Statement

In issues three through nine, appellant contends the trial
court erred in denying his motion to suppress his custodial statement because
the statement was given involuntarily.  Appellant argues the statement was
involuntary because it was coerced and because the police officers made false
promises of leniency.  








Although appellant claims, in separate issues, that admitting
the statement violates the Fifth, Sixth, and Fourteenth Amendments to the
United States Constitution, Article I, sections 10 and 19 of the Texas
Constitution, and articles 38.21, 38.22, and 38.23 of the Texas Code of
Criminal Procedure, appellant does not separately brief each issue.  Instead,
appellant briefs the issue generally under a single section of his brief. 
Therefore, we will address appellant=s constitutional
and statutory claims in the same way as necessary to resolve the question of
the trial court=s alleged error.  See Heitman v.
State, 815 S.W.2d 681, 690B91 n.23 (Tex. Crim. App. 1991) (treating
state and federal constitutions as providing the same protections when
appellant does not argue that they should be interpreted differently). 

A.      Applicable
Law and Standard of Review

1.       Applicable
Law

A statement may be deemed involuntary in three
circumstances: (1) noncompliance with article 38.22 of the Texas Code of
Criminal Procedure; (2) noncompliance with the dictates of Miranda v.
Arizona, 384 U.S. 436 (1966); or (3) a violation of due process or due
course of law because the statement was not freely given (e.g., coercion,
improper influences, incompetence).  Wolfe v. State, 917 S.W.2d 270, 282
(1996).  Here, appellant urges only the third circumstance.








The burden of proof at the suppression hearing is on the
prosecution.  Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App.
1995).  It must prove by a preponderance of the evidence that the defendant
gave his statement voluntarily.  Id.  Under federal due process, a
statement is involuntary if the defendant was offered inducements of such a
nature or coerced to such a degree that the inducements or coercionCnot his own free
willCproduced the
statement.  See id.  Under Texas law, article 38.21 of the Code of
Criminal Procedure requires that the statement be Afreely and
voluntarily made without compulsion or persuasion.@  Tex. Code Crim. Proc. art. 38.21. 
Article 38.23 states, in part, A[n]o evidence obtained by an officer or
other person in violation of any provisions of the Constitution or laws of the
State of Texas, or of the Constitution or laws of the United States of America,
shall be admitted in evidence against the accused on the trial of any criminal
case.@  Tex. Code Crim. Proc. art. 38.23(a). 
In determining the question of voluntariness, a court should consider the
totality of circumstances under which the statement was obtained.  Creager
v. State, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997).  The ultimate
question is whether the appellant=s will was overborne. 
Id. at 856.  

For a promise to render a confession invalid under Texas
law, the promise must be positive, made or sanctioned by someone in authority,
and of such an influential nature that it would cause a defendant to speak
untruthfully.  See Martinez v. State, 127 S.W.3d 792, 794 (Tex. Crim.
App. 2004): Herrera v. State, 194 S.W.3d 656, 659B60 (Tex.  App.CHouston [14th
Dist.] 2006, pet. ref=d).  The truth or falsity of a confession
is irrelevant to a voluntariness determination under both federal
constitutional law and state law.  Martinez, 127 S.W.3d at 794B95; Herrera,
194 S.W.3d at 660.

2.       Standard
of Review

We review a trial court=s ruling on a
motion to suppress evidence under an abuse of discretion standard.  See
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  At a
suppression hearing, the trial court is the sole fact‑finder and may
choose to believe or disbelieve any or all of the witnesses= testimony.  Alvarado
v. State, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993).  We give almost total
deference to the trial court=s determination of historical facts when
supported by the record, particularly if the findings turn on witness
credibility and demeanor.  State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim.
App. 2000); Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App.
2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The
same deference is accorded to determinations of mixed questions of law and fact
if their resolution depends upon witness credibility and demeanor.  Ross,
32 S.W.3d at 856.  Issues that present purely legal questions are considered
under a de novo standard. Id.  We will sustain the trial court=s ruling if it is
reasonably supported by the record and is correct on any theory of law
applicable to the case.  Villarreal, 935 S.W.2d at 138.








Appellant contends that, because his statement was
videotaped, we must review the trial court=s ruling de novo,
citing Mayes v. State, 8 S.W.3d 354, 358 (Tex. App.CAmarillo 1999, no
pet.), and Douglas v. State, No. 09-00-00484-CR, 2002 WL 538859, at *1B5 (Tex. App.CBeaumont, April
10, 2002, no pet.).  Recently, we cited these cases with approval in Herrera
v. State.  See 194 S.W.3d at 658.  In Herrera, we held that
when we have a videotaped confession and an uncontroverted version of events,
we review the trial court=s ruling on an application of law to facts
de novo.  Id. at 658 (noting there was no controversy about the
statements made by the police on the tape). 

However, we find this case distinguishable from Herrera
in two respects.  Unlike Herrera, the alleged promises of leniency here
do not appear on the videotape, and appellant testified at trial concerning his
alleged impairment and the coercion controverting trial testimony of the
officers who conducted the interview.  Thus, this case does not present only a
videotaped statement and an Auncontroverted version of events@ for our review. 
In addition to the videotape, the trial court considered other evidence that
was controverted and involved an evaluation of witness credibility and
demeanor.  For these reasons, we reject appellant=s argument that we
must review the trial court=s ruling de novo.

B.      Application
of Law to Facts

After the hearing on appellant=s motion to suppress,
the trial court entered findings and conclusions that include the following:
(1) no one threatened appellant or made him any promises to get him to confess,
(2) no one coerced him to give a statement, (3) he was provided with food and
water while in the city jail, and (4) he understood his rights and voluntarily
agreed to waive them and give a statement.  Accordingly, the trial court
determined the statement was admissible.  However, appellant contends he was
intoxicated during the interview and was denied food, water, and sleep before
it.[7] 
He also contends an unidentified officer or officers made false promises that
his cooperation would help them close cases and he Awould not be held
accountable for [his] actions.@  We address these contentions below. 








Appellant was arrested September 23, 2004 at about 4:00
p.m., and he gave his statement the following day around 1:00 p.m.  At the
hearing on the motion to suppress, appellant testified that he had not slept
for over twenty-four hours before the interview.  He also testified that before
going to meet with the officers, he was intoxicated from codeine cough syrup,
Zanex, and hydroponic marijuana, and he remained intoxicated during the
interview almost twenty-four hours later.  He had not eaten before meeting with
the officers, and he was not offered food or water while in detention.  He was
also unable to sleep because of the jail conditions and so was sleep-deprived. 
He explained that he decided to go ahead and give his statement so that he
would be Ataken care of,@ which to him
meant Abeing [g]iven a
cup of water, [and] treated like a human.@  According to
appellant, he eventually received a soft drink after he agreed to give his
statement.  Appellant also testified that he gave his statement because
unidentified officers implied or told him that his cooperation would Ahelp close some
cases@ and then he Awould not be held
accountable for [his] actions.@  He denied that he gave his statement
voluntarily.

Officers Rodriguez and Chappell testified that appellant
did not appear intoxicated at the time of his arrest.  Officer Chappell said
that appellant did not smell of marijuana.  Officer Rodriguez testified that he
was previously a Houston Police Department jailer, and the jail provides
prisoners with three meals a day, and appellant should have received at least
two meals before his interview.  He also stated that there were bunk beds
available for sleeping.  Officer Rodriguez testified that appellant recalled
the offenses they discussed with clarity and did not seem sleepy or
intoxicated.  Officer Rodriguez denied telling appellant that if he cooperated
he would get food and water, and he further testified that he gave appellant an
opportunity to drink water.  He also testified that appellant seemed intelligent
and appeared to understand his rights when he waived them before discussing the
details of the offense. 








Appellant complains that he was in custody for almost
twenty-four hours before he gave his statement, and he did not willingly
continue his questioning.  However, the length of time appellant was in custody
before he gave his statement was not coercive.  See Cox v. State, 644
S.W.2d 26, 28B9 (Tex. App.CHouston [14th
Dist.] 1982, pet. ref=d) (holding that eight hours of
questioning over two days was not coercive).  In addition, the videotape shows
that appellant was twice asked during the interview whether he was coerced,
promised, or threatened to make his statement, and he answered Ano@ both times. 

Even if we assume that appellant was intoxicated on codeine
syrup, Zanex, and hydroponic marijuana for almost twenty-four hours when he was
interviewed, that fact alone is not sufficient to render his confession
involuntary.  See Garcia v. State, 919 S.W.2d 370, 387 (Tex. Crim. App.
1994) (op. on reh=g); see also Alvarado v. State, 912
S.W.2d 199, 211B12 (Tex. Crim. App. 1995) (upholding
admission of statement by defendant who claimed to be intoxicated at the time
he made the statement in response to custodial interrogation).  Instead, the
question becomes whether the defendant=s intoxication
rendered him incapable of making an independent, informed decision to confess. 
Jones v. State, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996).  Appellant
suggests that intoxication coupled with sleep deprivation and lack of food and
water may render a suspect incapable of making an independent informed decision
to confess.  However, the only evidence to support this suggestion is appellant=s testimony, which
is contradicted by that of the officers.








Appellant also contends that he gave his statement because
unidentified officers promised him leniency in exchange for his statement. 
However, no other record evidence supports this assertion, and no such promise
appears on the videotape of appellant=s statement.  As
noted above, the videotape of his statement shows that appellant twice denied
he was promised anything in exchange for his statement.  Moreover, Officer
Rodriguez testified he did not make any promises to appellant.  Finally,
appellant=s own testimony is unclear as to what, if any,
promises police made.  He testified, Amy cooperation
would help close some cases and then I would not be held accountable for
actions or something of that sort that I was B that my
information would be of help to them.@  This assertion
is vague at best, and does not amount to a positive promise by someone with
apparent authority that would likely induce a false confession.  See Herrera,
194 S.W.3d at 660 (holding that officer=s statement, A[w]e can talk to
the D.A., get you an offer, if you can help us[,]@ did not amount to
a promise of leniency).

Having reviewed the evidence, we hold that appellant cannot
demonstrate an abuse of discretion.  The trial court was the sole judge of the
credibility of the witnesses, and chose to believe the videotape and the State=s witnesses and to
disbelieve appellant.  See Masterson v. State, 155 S.W.3d 167, 171 (Tex.
Crim. App. 2005) (stating that Athe trial court has discretion to
disbelieve testimony even if it is not controverted.  The trial court did in
fact discount appellant=s testimony and was within its discretion
to do so.@).  Moreover, we cannot say that appellant=s will was
actually overborne or that any alleged promise would likely lead to a false
confession.  Therefore, we overrule appellant=s issues three
through nine.

Conclusion

We overrule appellant=s issues and
affirm the trial court=s judgment.

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment rendered
and Memorandum Opinion filed February 13, 2007.

Panel consists of
Justices Fowler, Frost, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Roman had three children, and appellant was the
father of the youngest child.  They had lived together for two or three years.





[2]  Officer Rodriguez testified that, at the time of
appellant=s arrest, it was believed he was involved in the
possible kidnaping of Roman and her children, who were missing.  Appellant had
agreed to meet with another officer to review text messages from Roman on his
cell phone at a specific time and location.  Consequently, when appellant
arrived at the location, several officers converged on appellant with guns
drawn.  Later, the police determined that Roman voluntarily left the area with
her children, and appellant was not involved in any kidnaping.





[3]  Jackson v. Denno, 378 U.S. 368, 392B93 (1964) (establishing that when an accused contests
the admission of his statement as involuntary, due process requires that the
trial court hold a hearing outside the presence of the jury to determine its
admissibility); see also Tex.
Code Crim. Proc. art. 38.22, '
6.  We will address the details of the hearing in our discussion of appellant=s issues concerning the trial court=s alleged error in admitting the statement.





[4]  In the guilt/innocence phase, the jury saw only that
part of appellant=s statement in which he described the KT Foods
robbery.  Later, in the punishment phase, the jury saw other parts of the
statement in which appellant described participating in additional robberies.





[5]  The language in Zuniga the Watson
court expressly disavows is the following:  AThis
standard acknowledges that evidence of guilt can 'preponderate' in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt. Stated another way, evidence supporting guilt can
'outweigh' the contrary proof and still be factually insufficient under a
beyond‑a‑reasonable‑doubt standard.@  Watson,
204 S.W.3d at 416 (citing Zuniga, 144 S.W.3d at 485).





[6]  The relevant paragraph of the charge read as
follows:

 

The witness, Evelia Roman, is an accomplice, if an offense was
committed, and you cannot convict the defendant upon her testimony unless you
first believe that the testimony of Evelia Roman is true and that it shows the
defendant is guilty as charged in the indictment; and even then you cannot
convict the defendant unless you further believe that there is other evidence
in the case, outside of the testimony of Evelia Roman tending to connect the
defendant with the offense committed, if you find that an offense was
committed, and the corroboration is not sufficient if it merely shows the
commission of the offense, but it must tend to connect the defendant with its
commission, and then from all of the evidence you must believe beyond a
reasonable doubt that the defendant is guilty of the offense charged against
him.





[7]  Appellant also mentions that he had Alimited language skills.@  However, appellant makes no argument relating to this assertion and
we find no support for it on the videotaped statement; therefore, we do not
address it.