# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00669-CR

**State of Texas, Appellant**

**v.**

**Marcus Tyler Scheffield, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT
### NO. CR2011-575, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Marcus Tyler Scheffield has been charged with two counts of sexual assault of a child. *See* Tex. Penal Code § 22.011(a)(2). In this interlocutory appeal, the State challenges the trial court's pretrial order granting Scheffield's motion to suppress statements that he made to a detective during the investigation. The State asserts that Scheffield's statements are admissible because he was not in custody and his interview did not rise to the level of a custodial interrogation. We reverse the trial court's order of suppression and remand this case for further proceedings.

### BACKGROUND

According to the evidence presented at the suppression hearing, Scheffield gave his friend, Steven Villarreal, a ride to meet "Valerie" and her friend, "Maria," both aged fourteen.[1]

---

[1] To protect their privacy, we refer to the underage victims by fictitious names.

Scheffield was nineteen years old at the time. One week after this gathering, Valerie gave a forensic interview in which she admitted to having sexual intercourse with Villarreal. Valerie also told the forensic interviewer that she saw Maria performing oral sex on Scheffield.

On August 3, 2011, Detective Schroeder of the New Braunfels Police Department (NBPD) met with Scheffield at Scheffield's house and told him that he was investigating a case involving Scheffield. The detective asked Scheffield to come to the police station to make a voluntary statement, and Scheffield agreed. In the video-recorded interview, Scheffield conceded that he drove himself to the police station and was there voluntarily. He was told that he could leave at any time.

During his interview, Scheffield told Detective Schroeder his side of the story, explaining that Valerie and Maria appeared to be underage and that he believed that Villarreal had sex with Valerie. However, Scheffield insisted that he did not have any sexual contact with Maria. Detective Schroeder said that Scheffield's version of events differed from what the detective was told by others. Approximately forty minutes into the interview, Detective Schroeder played a video of Valerie saying that she saw Maria performing oral sex on Scheffield. Scheffield again denied this happened. Detective Schroeder said that Villarreal confirmed everything that Valerie said and told Scheffield, "Just so you know, you can hear it for yourself." Before Detective Schroeder could start the video recording of Villarreal's interview, Scheffield asked to go to the restroom. Schroeder responded "You want to listen to this real quick?" and started playing the video interview of Villarreal. Detective Schroeder is heard on the video saying that the interview pertained to an investigation of Marcus Tyler Scheffield. Scheffield again requested to go to the restroom, and Detective Schroeder escorted him to and from the restroom.

2

When Scheffield returned to the interview room, he asked if he was a witness or a suspect. Detective Schroeder told Scheffield that he was both and that he was trying to get Scheffield's side of the story. The following exchange then occurred:

[SCHEFFIELD]: As much as I want to continue this interview and to be honest, with my little knowledge of specifically the law, I'm not sure that I want to continue this interview right now without an attorney, just because I don't know what the police department's intentions are or the county's in terms of charges or whatnot and I believe that I need someone who can tell me what to do or not to do. So, as much as I would love to continue and to be honest I don't know how much . . . basically I don't know whether I'm going to be looking at charges or not, and if that's the case, then regardless of whether I'm being honest or not.

[DETECTIVE]: That's what I'm telling you right now. I'm telling you exactly what it is. I understand your hesitance on you not knowing if you want to continue or not.

[SCHEFFIELD]: So you are saying that you are looking at charges against me?

[DETECTIVE]: Let me show you . . . this is your evidence jacket; this is your folder. O.K. This is where it's already at, Marcus. So, this is your opportunity to tell me exactly what happened.

[SCHEFFIELD]: And then what?

[DETECTIVE]: If you're honest with me, I'm taking it straight to [the prosecutor]. I'm gonna give it to him. It's already going this far anyhow. I know you've already been deceptive with me. I already know that. And you already know that I know that too. Cause I've already got this [pointing to something on desk], I've already got this [pointing to photographic evidence on the wall], I've got Maria's interview, I've got everything. I've got it all. You were the last piece of the puzzle. So I want you to be honest with me. [The prosecutor] wants you to be honest because he's going to be watching this right now. . . . .

3

| | |
|---|---|
| [SCHEFFIELD]: | I know what your job is and your job is to put people away, and as much as I want to be honest, I don't want to nail my own coffin shut. |
| [DETECTIVE]: | My job is not to put people away. My job is to find the evidence in the case, and I've already found it. My job is to give you the opportunity, Marcus, to tell the truth, so when people do have the decision to put you away or not, they can say, 'Hey, was Marcus honest with me?' . . . . |
| [SCHEFFIELD]: | If I'm honest with you will I be leaving here today? |
| [DETECTIVE]: | Yes you are. When you walked in here and I told you, you can come in here and I'll let you walk out that door, you're darn right I am. That's my word. But you got to tell me the truth. Tell me the truth and tell [the prosecutor] the truth. |

Scheffield sat silently for a moment, looking at the floor, and then said, "It's true." He confirmed that he received oral sex from, and had intercourse with, Maria. After another minute-and-a-half of being questioned and providing admissions, Scheffield told Detective Schroeder, "I don't think I can keep going right this second. I'm going to come back tomorrow and finish." Detective Schroeder reiterated that Scheffield "can walk right out this door at any time," but continued questioning Scheffield for another minute or so. Detective Schroeder then said, "All right, well, instead of going through the whole thing, you asked to leave, I can't stop you from leaving, and that's your wishes, so I'm gonna let you go." As he was leaving Scheffield asked, "Do you need me to come back tomorrow or anything?" Detective Schroeder said he would like for Scheffield to return and tell him everything that happened. Scheffield left the station and did not return the next day. The interview lasted just over one hour.

4

On August 18—fifteen days after Scheffield's station-house interview—an arrest warrant was issued for Scheffield. He was then arrested for two counts of sexual assault of a child. Prior to trial, Scheffield filed a motion to suppress statements he made to Detective Schroeder. The evidence presented at the suppression hearing consisted of the offense report and a copy of Scheffield's video-recorded interview at the police station. The trial court granted the motion to suppress, noting that Scheffield "invoked right to counsel at time 15:59 on tape." The trial court issued written findings of fact and conclusions of law to support its ruling. The State filed this interlocutory appeal challenging the trial court's order suppressing Scheffield's statements. *See* Tex. Code Crim. Proc. art. 44.01(a)(5) (granting State right to appeal pretrial order suppressing evidence if jeopardy has not attached).

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). A trial court abuses its discretion if its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A trial court's ruling on a motion to suppress will be affirmed if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

"In reviewing a trial court's ruling on a *Miranda*-violation claim, an appellate court conducts a bifurcated review." *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012); *see also Miranda v. Arizona*, 384 U.S. 436 (1966). We afford almost total deference to a trial court's determination of historical facts, but review pure questions of law de novo. *Alford*, 358 S.W.3d

5

at 652. Likewise, we give almost total deference to a trial court's resolution of a mixed question of law and fact if the question turns on the credibility and demeanor of witnesses. *Id.* However, if credibility and demeanor are not necessary to the resolution of a mixed question of law and fact, we review the question de novo. *See id.*; *Young*, 283 S.W.3d at 873.

"The decision as to whether custodial questioning constitutes 'interrogation' under *Miranda* is a mixed question of law and fact." *Alford*, 358 S.W.3d at 653. When, as here, the custodial questioning has been videotaped and the underlying events are not in dispute, the trial court's ruling is merely an application of uncontested facts to the law. *See Herrera v. State*, 194 S.W.3d 656, 659 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Mayes v. State*, 8 S.W.3d 354, 358 (Tex. App.—Amarillo 1999, no pet.). Thus, we review the trial court's ruling on the suppression motion de novo.

## DISCUSSION

In its first point of error, the State asserts that the trial court erred in granting Scheffield's motion to suppress the statements he made to Detective Schroeder. Specifically, the State asserts that Scheffield was not in custody during his station-house questioning and his interview did not rise to the level of a custodial interrogation. As such, the State contends, Scheffield was not entitled to be given *Miranda* warnings, nor was he entitled to have counsel present.

### Custodial Interrogation

The threshold issue in this case is whether Scheffield's interview amounted to a custodial interrogation. Both the *Miranda* line of cases and article 38.22 of the Texas Code of

Criminal Procedure require that the accused be properly admonished of certain constitutional rights in order for his statements "stemming from custodial interrogation" to be admissible as evidence against him. *See Miranda*, 384 U.S. at 444; Tex. Code Crim. Proc. art. 38.22 §§ 2, 3 (listing required admonishments for written and oral statements of accused). "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. The defendant bears the burden of proving that a statement was the product of a custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).

To determine whether an individual is in custody, a court must first examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California,* 511 U.S. 318, 322 (1994) (internal citations and quotations omitted). This determination of custody "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Id*. at 323. After the circumstances surrounding the interrogation are considered, the court must determine whether, "given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *see also Herrera,* 241 S.W.3d at 525.

The court of criminal appeals has identified four general situations that may constitute custody:[2]

---

[2] Questioning that begins in a noncustodial environment can become custodial in nature at some later point during the interrogation. "[P]olice conduct during the encounter may cause a

7

(1) when the suspect is physically deprived of his freedom of action in any significant way;

(2) when a law enforcement officer tells the suspect that he cannot leave;

(3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and

(4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). The first through third situations require that the "restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention." *Id.* (citing *Stansbury*). The fourth situation requires the "officers' knowledge of probable cause be manifested to the suspect." *Id.* This can occur either by the officers relating information substantiating probable cause to the suspect or by the suspect to the officers. Situation four does not automatically establish custody, but rather "custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Id*.

After reviewing the video-recorded questioning of Scheffield, we cannot conclude that it would meet any of the four custodial situations outlined by the court of criminal appeals in *Dowthitt*. Scheffield was not physically deprived of his freedom of action in any significant way. The record shows that Scheffield came to the police station voluntarily in his own vehicle. He was told twice during his video-recorded interview that he did not have to answer any questions and that he could leave at any time. Scheffield was never physically restrained. He was allowed to go to the

consensual inquiry to escalate into custodial interrogation." *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996) (citing *Ussery v. State*, 651 S.W.2d 767, 770 (Tex. Crim. App. 1983)).

restroom shortly after requesting to do so. And when Scheffield said that he did not want to continue with the interview and wanted to finish it the next day, he was allowed to leave the station. The questioning lasted just over an hour. Detective Schroeder did not create a situation that would lead a reasonable person to believe that his freedom of movement was significantly restricted. Scheffield's freedom of movement was not restricted to a degree associated with an arrest.

Although Detective Schroeder did indicate to Scheffield that there was probable cause to arrest him by showing him the investigation file and telling him that he has "got it all" (referring to evidence against Scheffield), afterward Detective Schroeder told Scheffield he could leave and allowed him to do so. Based on the totality of the circumstances, we cannot conclude that Detective Schroeder's statement about the evidence he had compiled "would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest."

Reviewing the interview in its totality, we conclude that the objective circumstances of the questioning were non-custodial in nature. The case at hand is similar to many cases considered by the United States Supreme Court, the court of criminal appeals, and this Court—all of which have come to the conclusion that the accused was not in custody during questioning, and thus not entitled to *Miranda* or article 38.22 warnings.[3] In these cases, the accused voluntarily came to the police station, was either told he or she was not under arrest or was free to leave, was told he or she did not have to answer any questions, and then the accused was allowed to leave the station house after making incriminating statements.

---

[3] *See, e.g.*, *California v. Beheler*, 463 U.S. 1121 (1983); *Oregon v. Mathiason*, 429 U.S. 492, 493–95 (1977); *Estrada v. State*, 313 S.W.3d 274, 288–95 (Tex. Crim. App. 2010); *Gardner v. State*, 306 S.W.3d 274, 293–95 (Tex. Crim. App. 2009); *Meek v. State*, 790 S.W.2d 618, 620 (Tex. Crim. App. 1990); *State v. Dickerson*, No. 03-10-00536-CR, 2012 WL 3055526, at *7–8 (Tex. App.—Austin July 27, 2012, pet. ref'd) (mem. op., not designated for publication).

**Invocation of Right to Counsel in a Non-Custodial Setting**

Having concluded that Scheffield's interview did not constitute custodial interrogation, we next turn to the issue of whether the interview should have ceased once Scheffield attempted to invoke his right to counsel.

The trial court's conclusions of law indicate that the court suppressed Scheffield's statements, in part, based on Scheffield's possible invocation of his right to counsel during questioning. If Scheffield was in custody and invoked his right to counsel, "the interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474. The custodial interrogation may not continue "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). Therefore, if Scheffield was in custody and invoked his right to counsel, his post-request "responses to further interrogation may not be used to cast doubt on the clarity of his initial request for counsel." *Smith v. Illinois*, 469 U.S. 91, 91 (1984).

However, as we previously discussed, Detective Schroeder's questioning did not rise to the level of custodial interrogation, and thus Scheffield was not in custody when he possibly invoked his right to counsel. The court of criminal appeals has clearly stated that when an accused is not in custody, the police are not obligated to stop questioning him if he invokes his right to counsel. *See Estrada v. State*, 313 S.W.3d 274, 296 (Tex. Crim. App. 2010). In *Estrada*, the court concluded that Estrada was not in custody when he provided a video-recorded statement and possibly invoked his right to counsel. *Id.* at 294. Shortly after being brought into the interview room, Estrada made some references to a lawyer. *Id.* at 289. The court concluded that "[e]ven if we were to assume that appellant unambiguously invoked his right to counsel and to silence during the noncustodial

10

interrogation setting, we do not agree that the police were required to honor these invocations."[4]

*Id.* at 296.

This Court has also previously considered a case with a similar fact pattern and came to the same conclusion as the court of criminal appeals. In *Rian v. State*, the appellant voluntarily went to the police station to discuss allegations that she sexually assaulted a child. *Rian v. State*, No. 03-07-00599-CR, 2009 WL 2476607, at *1 (Tex. App.—Austin Aug. 11, 2009, pet. ref'd) (mem. op., not designated for publication). Officers began the interview by telling Rian that the door was unlocked and that she was free to leave at any time. *Id.* After the officers began pressing her for the truth, she made a reference to an attorney and pulled out his business card. *Id.* at *2. At a certain point during the questioning Rian said, "Well then, I need to call the attorney." The officer said, "No," and began to play one of the recorded conversations between Rian and the boy. *Id.* After nearly two hours of questioning, Rian admitted to having sexual relations with the child. *Id.* at *3.

In addressing Rian's argument that the interview became a custodial interrogation when her request for counsel was not honored, this Court explained that:

---

[4] The court went on to adopt the following relevant discussion from its prior unpublished decision in *Davis v. State*:

> Because the appellant was not in custody, law enforcement officials had no obligation under *Miranda* to scrupulously honor a request to terminate questioning . . . . The need to scrupulously honor a defendant's invocation of *Miranda* rights does not arise until created by the pressures of custodial interrogation. Without those pressures, the police are free to attempt to persuade a reluctant suspect to talk, and the immediate termination of the interrogation after the invocation of rights is simply not required.

*Estrada*, 313 S.W.3d at 296 (quoting *Davis v. State*, No. AP-74393, 2007 WL 1704071, at *5 (Tex. Crim. App. June 13, 2007)).

[T]he officers had no obligation under the Fifth Amendment to honor those requests [for counsel] if appellant was not in custody. Appellant's argument in support of her contention is a form of bootstrapping: she asserts that she was in custody because she was not allowed to speak to the lawyer and that she was entitled to speak to the lawyer because she was in custody. Appellant does not refer us to any authority holding that a person's request to speak to counsel, in and of itself, transforms a noncustodial interrogation into a custodial interrogation under the Fifth Amendment.

*Id.* at \*4 (internal citations omitted). We concluded that "[b]ecause appellant was not in custody, she had no Fifth Amendment right to counsel and the officers were not obligated to stop questioning her when she asked to speak to her attorney." *Id.* at \*5.

The same rationale applies in this case. Based on this record, we conclude that Scheffield was not in custody when he was questioned, and as such Detective Schroeder was not obligated to advise Sheffield of his *Miranda* rights. Given that Scheffield was not in custody, the detective also was not obligated to stop questioning Scheffield after he expressed a reluctance to continue the interview without counsel. As such, Scheffield's statements are admissible, regardless of whether he requested to have counsel present.[5]

## CONCLUSION

We reverse the trial court's order suppressing Scheffield's statements and remand this cause to the trial court for further proceedings.

---

[5] Because we conclude that Scheffield was not in custody and his statements are admissible, we do not address the State's alternative argument that Scheffield's invocation of his right to counsel was ambiguous.

12

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Reversed and Remanded

Filed:   December 30, 2014

Do Not Publish