UNITED STATES of America,
Plaintiff-Appellee,

v.

Florencio LEDEZMA–HERNANDEZ,
Defendant-Appellant.

No. 83–1340.

United States Court of Appeals,
Fifth Circuit.

March 26, 1984.

Jose J. Tavarez, Del Rio, Tex., Court-appointed, for defendant-appellant.

Daniel Maeso, Ellen Byers, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, REAVLEY and WILLIAMS, Circuit Judges.

REAVLEY, Circuit Judge:

Florencio Ledezma-Hernandez appeals his conviction for possessing marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a) (1976), and for importing marijuana into the United States from Mexico, in violation of 21 U.S.C. § 960(a)(1) (1976). He challenges the admission of allegedly inconsistent statements made after he received *Miranda* warnings but before he received the assistance of counsel. He also challenges the sufficiency of the evidence and the prejudicial effect of a prosecutor's jury argument. We affirm.

## I. Statement of the Case

On November 22, 1982 Florencio Ledezma-Hernandez drove a tanker truck from Mexico to the port of entry at Eagle Pass, Texas. At the primary inspection station he was asked if he had anything to declare. He responded in the negative and was referred to a secondary inspection station to

obtain a permit to travel to Houston, where he stated he was to "bring" a load of gas. He gave what the inspection officer considered to be inconsistent and suspicious answers to routine questions asked at border crossings. He allegedly told one officer he was taking gas to Houston, yet he told customs officials he had nothing to declare. He told one officer he was going to Houston and told another he was going to San Antonio. The border officials then inspected the truck and discovered wrench marks, inadequate safety equipment, and other examples of what officials believed to be alterations to the "fifth wheel area," a storage area below the tank. They weighed the truck, found it to be overweight, and called in officers of the Drug Enforcement Agency and the Texas Department of Public Safety. At this point officers read the defendant his *Miranda* rights. They told the defendant he was not under arrest, but was being detained pending inspection of the truck. The officers dismantled the fifth wheel area and discovered 3,260 pounds of marijuana.

The officers arrested Ledezma-Hernandez and took him to the Drug Enforcement Agency headquarters for interrogation. They took him to the Maverick County jail in Eagle Pass that evening. The magistrate arraigned him the next morning and advised him of his constitutional rights. Since Ledezma-Hernandez had $300 in his possession, the magistrate told him that counsel would not be appointed. The defendant responded that attorneys cost a lot of money. The government contends that the defendant said he would retain his own counsel. Ledezma-Hernandez testified that he expected counsel to be appointed.

Ledezma-Hernandez was then taken to the Drug Enforcement Agency office. His *Miranda* rights were again read to him, and he was questioned without assistance of counsel. The defendant again gave inconsistent responses to questions. He first stated he did not know who offered him the truck driving job, then said that he was offered the job by a man known only as Armando. He said he hitchhiked to Tula, Mexico to get the truck and found the keys on a rear tire, and then stated that Armando drove him to Tula to get the truck and gave him the keys. He did not know the location of the company in Houston, who would fill the truck, or the kind of gas he was to pick up.

At no time did Ledezma-Hernandez confess to knowing that marijuana was in the truck. At trial, the government attempted to attribute knowledge of the contents of the truck to Ledezma-Hernandez by his inconsistent statements regarding the terms of his employment. It postulated that the owners of an expensive tanker truck rig would not entrust the rig, much less a carload of marijuana valued at one million to two and one-half million dollars, to a man met at a chance meeting. It further suggested that the defendant would have known more about the nature of his job and his employers. The defendant countered that he was paid only $300, a sum hardly commensurate with the risk of transporting an illegal drug of such great value. The jury rendered a guilty verdict and Ledezma-Hernandez appeals.

## II. Admissibility of Defendant's Statements

Ledezma-Hernandez contends, first, that the admission of statements made during questioning at the border and during the subsequent interrogation violated his right to remain silent and his right to counsel. It seems clear that the interrogation of the defendant after arraignment violated his *Miranda* rights. It is well established that if the defendant requests counsel, the interrogation must cease until an attorney is present. *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). Here, Ledezma-Hernandez made clear his desire for counsel. The sole question was whether counsel would be appointed or retained. Witnesses for the government testified that the defendant could have used the telephone at any time to call an attorney, but that he waived this right by making no effort to do so. Waiver cannot be so inferred, however. A valid waiver of the

right to have counsel present during custodial interrogation cannot be established by the fact that defendant continued to respond to questions. *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). There must be a knowing and voluntary relinquishment of his right to counsel. *Id.,* 451 U.S. at 483, 101 S.Ct. at 1884. In this case, the record contains no evidence of waiver of this right other than Ledezma-Hernandez' continued response to the interrogation. Having made no waiver, the defendant's interrogation was in violation of his Fifth Amendment rights and the statements obtained during this custodial interrogation were inadmissible. *Edwards,* 451 U.S. at 487, 101 S.Ct. at 1886.

 The error in this case was harmless, however, because the government introduced similar statements made by the defendant in response to questions from the border patrol. *Miranda* applies only to statements made while the defendant is in custodial interrogation. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. Routine questioning at the border does not constitute custodial interrogation. *United States v. Ackerman,* 704 F.2d 1344, 1348–49 (5th Cir.1983); *Accord United States v. Henry,* 604 F.2d 908, 919 (5th Cir.1979). The customs officers asked the defendant his destination and the contents of his truck—routine questions asked of all such vehicles passing through the check point. Having answered that he was going to Houston, Ledezma-Hernandez was required to go to a secondary checkpoint to obtain a permit. Referral to a secondary checkpoint, similarly, is considered to be routine border inspection procedure and does not subject the driver to custodial interrogation. *Henry,* 604 F.2d at 920.

 The major factor considered in determining whether an interrogation is custodial in nature is whether the investigation has focused on the defendant at the time of the interrogation. *Randall v. Estelle,* 492 F.2d 118, 120 (5th Cir.1974). The investigation in this case did not focus on the defendant until the officers weighed the truck and noted the scratch marks on the truck. They called Drug Enforcement Agency officials, read the defendant his *Miranda* rights, and told him he was being detained. At that point Ledezma-Hernandez became the focus of the investigation and his *Miranda* rights attached. The inconsistent statements were made prior to this change in status, however. Thus the presence of an attorney was not required and the statements were admissible.

 Inasmuch as these earlier statements were admissible, Ledezma-Hernandez' attempt to explain them at the trial is also admissible. Where a defendant takes the stand to overcome the impact of the testimony that has been illegally obtained, the trial testimony itself becomes tainted by the illegally obtained statements. *Harrison v. United States,* 392 U.S. 219, 223, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968). In this case, however, the defendant would have had to take the stand to explain the legally obtained statements made during the routine border stop. No taint is associated with the trial testimony.

### III. Sufficiency of the Evidence

Appellant's second contention is that the evidence was insufficient to support a conviction. The alleged defect in proof is the government's failure to show that Ledezma-Hernandez knowingly and intentionally possessed and attempted to import the marijuana. He argues that he was hired for $300 to drive a truck and did not know that the vehicle contained marijuana.

 The standard by which we review the sufficiency of the evidence in a criminal case is whether a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *United States v. Michelena-Orovio,* 719 F.2d 738, 742 (5th Cir.1983) (en banc). The evidence must be considered in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

314

In order to prove that Ledezma-Hernandez imported the marijuana, the government must show that he had knowledge of the presence of the drug. *United States v. Restrepo-Granda*, 575 F.2d 524, 528–29 (5th Cir.), *cert. denied*, 439 U.S. 935, 99 S.Ct. 331, 58 L.Ed.2d 332 (1978). Because knowledge and intent are subjective elements, direct proof is not required. The elements may be inferred from the circumstances of the case. *United States v. Fonseca*, 490 F.2d 464, 470 n. 5 (5th Cir.), *cert. denied*, 419 U.S. 1072, 95 S.Ct. 660, 42 L.Ed.2d 668 (1974). To establish possession with intent to distribute, the government must show that Ledezma-Hernandez knew of the marijuana, that he had possession of it, and that he intended to distribute it. *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir.1982). This charge, too, may be proved by circumstantial rather than direct evidence. *Id.*

The circumstantial evidence in this case gives ample support for the jury verdict. Ledezma-Hernandez was in possession of a large quantity (3,260 pounds) of a controlled substance with a street value of more than one million dollars. Intent to distribute may be inferred from possession of a large quantity of drugs or from its price. *Id.* at 62. The truck he was driving had been materially altered to accommodate the load of marijuana and was unfit to carry gas. The jury could have believed that Ledezma-Hernandez, a truck driver by trade, was aware of the condition of his vehicle. There was some testimony that a smell of marijuana was present, which would have warned the driver of the contents of the truck. Ledezma-Hernandez was unfamiliar with his destination, the nature of the gas he was to pick up in Houston, his duties once he arrived there,

his employer, or the full name of the man who hired him. He was unable to give a consistent explanation of the details of his role in the delivery of the truck to Houston. The jury could easily have concluded from these facts that Ledezma-Hernandez' explanation was improbable, that he knew the truck contained marijuana, and that he intended to import and to distribute the drug.

## IV. Closing Argument

Ledezma-Hernandez' final contention is that he was denied due process by the prejudicial effects of the prosecutor's closing argument.[1] This contention is without merit. Generally, a prosecutor is prohibited from making arguments that go beyond the evidence, mislead the jury, or inflame the jury to act as the conscience of the community. *United States v. Phillips*, 664 F.2d 971, 1030 (5th Cir.1981) (Unit B). While the statements tend to appeal to community conscience, when viewed in the context of the whole argument and when balanced by the trial judge's instruction, *see id.* at 1031, the argument does not appear to have been fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Whittington v. Estelle*, 704 F.2d 1418, 1421 (5th Cir.1983).

AFFIRMED.

---

1. The portion of the argument challenged is as follows:

Much has been said about the government's interest in this case. It's only interest is to convict and for statistical purposes not to do justice? [sic] Well, you know what the government's interest is. You know what your interest is as members of this particular community who live very close to the borders and it is to protect these borders.

. . . .

Protect the security of the courts. Do not make these borders a haven for dope smugglers because from then on you will have people attempting and actually crossing, and when caught saying: "I didn't know I had dope."