UNITED STATES of America, Plaintiff-Appellee,

v.

Steve MOJICA, Defendant-Appellant.

No. 83–2697.

United States Court of Appeals, Fifth Circuit.

Oct. 30, 1984.

Frank Maher, Laredo, Tex., for defendant-appellant.

Daniel K. Hedges, U.S. Atty., James R. Gough, Susan L. Yarbrough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

A jury found Steve Mojica guilty of participating in a criminal conspiracy to possess, with intent to distribute, more than one thousand pounds of marihuana.[1] Moji-

ca urges this Court to reverse the conviction or to order a new trial on the ground that the prosecutor committed misconduct during his closing remarks to the jury.[2] Appellant contends that the government attorney called upon the jurors to draw "impermissible inferences" from a photograph that the district court had admitted into evidence. Mojica's counsel did not object to admission of the photograph, and he did not request an instruction limiting the prosecutor's use of the photograph for evidentiary purposes. We affirm.

## FACTS

### A. The Conspiratorial Event

On August 4, 1984, not long after sundown, Texas law enforcement officials raided a small ranch in Dallas. The ranch belonged to members of Mojica's family. The officials arrested several persons, including Steve Mojica, and seized a number of vehicles. Among the vehicles was Mojica's white panel van. The officers also confiscated a tractor and semitrailer. The rig contained several thousand pounds of marihuana, which the government alleged the conspirators had transported from Mexico.

Testimony as to Mojica's awareness of the semi rig and its cargo conflicted at trial. Mojica stated that he finished work at 5:30 that afternoon and arrived at the ranch half an hour later. He expected a cookout and brought two cases of beer for consumption at the event. Upon reaching the property, he parked his white van, which he used in his work delivering magazines, near the only house on the ranch. At no time that day did he see the semi rig. Given his asserted parking location, the house obscured the tractor/trailer from his view. He denied knowing about the rig or its contents.

---

1. *See* 21 U.S.C. § 841(a)(1) (1982) (classifying as an "unlawful act" possession of a controlled substance with intent to distribute it); *id.* § 846 (criminalizing conspiracies to violate *inter alia* § 841(a)(1)).

2. Mojica appeals specifically from the district court's denial of his motions for a judgment of acquittal, *see* Fed.R.Crim.P. 29, and for a new trial, *see id.* 33.

The testimony of a witness for the government contradicted parts of Mojica's story. Danny Lewis, an investigator with the Texas Department of Public Safety Narcotics Service, stated that he and other officers had staked out the premises for several hours immediately before the raid. He saw Mojica twice; one sighting occurred at 4:30 that afternoon, well before the time at which Mojica said he arrived. Lewis observed no indicia of a cookout in progress. He did not, however, testify specifically as to the location of Mojica's white van.

The government's testimonial evidence thus did not establish clearly Mojica's knowledge of the marihuana. We assume without deciding that without further admissible evidence of such knowledge the jury would have had insufficient evidence to convict Mojica of participating in the conspiracy.[3] Disposition of this appeal, therefore, turns on the admissibility of a photograph that depicts Mojica's white van beside the semi rig.[4] If admissible to show the juxtaposition of the van and rig, the photograph tends to destroy Mojica's claim that he knew nothing of the marihuana and thus did not join the conspiracy.

### B. The Photograph

Texas Narcotics Investigator Lewis sponsored the photograph, which the government had marked as Exhibit Number 7. Lewis responded to the prosecutor's questions as follows:

BY MR. RODRIGUEZ:

Q. Mr. Lewis, let me show you once more what has been marked Government's Exhibit No. 7 and No. 8 and ask if you can identify these two photographs.

A. Yes, sir, I can.

Q. What are those photographs of?

A. No. 7 is taken at the scene of the arrest. It shows the trailer that was there that night, that was loaded with marijuana. It shows a panel-type truck—

. . . . .

In this picture, I'm familiar with the picture as a trailer, I see a panel truck and I see a brown van, that I drove to the D.P.S. [Department of Public Safety] Office, and I'm very familiar with that. This is Exhibit No. 7.

. . . . .

Q. Are those two photographs fair and accurate representations of what they show?

A. Yes, sir.

Another government witness identified the "panel-type truck" as Mojica's white van. Mojica admitted that the photograph depicted his van.

Mojica's counsel did not object to the photograph when it was received in evidence. He asked no questions regarding it. He did not request an instruction, pursuant to Fed.R.Evid. 105, limiting the evidentiary use of the photograph. Counsel objected, however, when the prosecutor suggested to the jury that the photograph proved Mojica's knowledge of the tractor/trailer and its illicit cargo.

### THE ISSUES

Mojica's appeal presents two questions. The first involves whether the government properly authenticated the photograph so as to permit its use in showing the juxtaposition of Mojica's van and the semi rig. The second concerns whether the prosecutor's remarks to the jury constituted testimony as to facts outside the record. We address each issue in turn.

---

3. Our assumption reflects the paucity of evidence establishing Mojica's intent to participate in the conspiracy. See, e.g., United States v. Blessing, 727 F.2d 353, 355 (5th Cir.1984) ("The government must show beyond a reasonable doubt that the defendant had the deliberate, knowing, and specific intent to join the conspiracy.") We emphasize, however, that we do not decide whether the evidence, exclusive of the evidence that Mojica challenges, would have sufficed to convict him.

4. Although Mojica purports to challenge only the prosecutor's closing argument, the propriety of the remarks depends on the admissibility of the photograph.

## A. *Authentication*

■ We note at the outset that Mojica's failure to object to receipt of the photograph as evidence or to request a limiting instruction casts upon him an onerous burden. We may overturn the district court's admission of the photograph only upon a showing of plain error. *E.g., United States v. Gaspard,* 744 F.2d 438, 442 n. 6 (5th Cir.1984). We find no such error.

Established principles guide our decision. As we said recently, "[t]he Federal Rules of Evidence do not require absolute certainty in authentication, but rather 'evidence sufficient to support a finding that the matter in question is what its proponent claims.' " *Mauldin v. Upjohn Co.,* 697 F.2d 644, 648 (5th Cir.1983) (quoting Fed.R. Evid. 901(a)), *cert. denied,* —— U.S. ——, 104 S.Ct. 155, 78 L.Ed.2d 143 (1984). Moreover, in the absence of a showing to the contrary, we presume that the government did not deliberately alter the scene before photographing it to cause the photograph to misrepresent the facts. *See United States v. Stearns,* 550 F.2d 1167, 1170 (9th Cir.1977) (quoting *United States v. Coades,* 549 F.2d 1303, 1306 (9th Cir.1977)); *cf. United States v. Johnson,* 679 F.2d 54, 59 (5th Cir.1982) (presumption against prosecutorial vindictiveness).

In this case, Lewis testified that the photograph depicted "the scene of the arrest" and that after the raid he drove one of the vehicles from the ranch to the DPS Office. From this testimony it could be inferred that the photograph reflects the scene soon after the raid began. The prosecution thus established, to a reasonable degree, the time and place of the photograph. Such a showing discharges the prosecution's burden of authentication under Fed.R.Evid. 901(a).

Mojica did not offer proof to overcome the presumption that government officials acted properly in taking the photograph. We thus find no plain error and hold that the district court correctly admitted the photograph.

### B. *Claims of Prosecutorial Misconduct in Closing Argument*

■ Our holding of proper authentication deprives Mojica's claim of prosecutorial misconduct of much of its force. No impropriety arose from the prosecutor's urging the jury to infer from the photograph that Mojica knew of the marihuana and thus intended to join in the conspiracy.[5] The government attorney merely stated "his contention as to the conclusion that the jury should draw from the evidence." *United States v. Shaw,* 701 F.2d 367, 390

---

**5.** The prosecutor, in his argument, said:

I was going to—let me talk a little bit more about Steve Mojica. I'm going to tell you right now—I was going to wait until the end, but I'm going to tell you right now why his story does not wash, and I'm going to show you that his story is untrue and what Angelo Rosales tells you and what the evidence tells you is, beyond a reasonable doubt, true. He says he did not get there until after six. Never saw the truck. He even drew a little map for you—drew a little map for you that he said, I parked over here in the front and the tractor/trailer was way in the back and I never saw it until after I was arrested. Remember that? Remember that. Never saw it. And then by his own admission, ladies and gentlemen, I show him a picture—after Angelo Rosales already told you that this van, in the middle, was the van that Steve Mojica was driving, he drove it the time before when he helped him deliver the marijuana for Jesse and he was driving it that night and then Steve Mojica says, yeah, that's the one I was

driving, but I didn't know what was happening. I had magazines in it. Little did he know, at that time, that that innocent seeming statement was going to hang him, and let me show you why.

. . . I didn't question Mr. Mojica ... because he will always have an answer. He will always have an answer, no matter what it is, but we catch him. If he was there, after the van, and didn't see it, what is his van doing along with two others behind the tractor/trailer? ... Sure, he's going to say, you know, well, the [Drug Enforcement Agency officials] moved it. The DEA didn't even know the significance of this picture until Steve Mojica got on the stand and said I got there after the truck and never saw it; but by his own testimony, you know his story is not true. It's his van and he admits it and he drives it there to where the big truck is with the marijuana and to do what: To unload the marijuana into the van ....

(5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984); *see United States v. Dorr,* 636 F.2d 117, 120 (5th Cir.1981). His closing remarks did not "go beyond the evidence, mislead the jury, or inflame the jury to act as the conscience of the community." *United States v. Ledezma-Hernandez,* 729 F.2d 310, 314 (5th Cir.1984); *see United States v. Phillips,* 664 F.2d 971, 1030 (5th Cir.1981). The argument did not deny Mojica a fair trial.

■ Moreover, even assuming that the prosecutor's inferences went too far beyond the record evidence, we hold that the district court's prompt, curative instructions rendered harmless any misconduct.[6] Five times the trial judge warned the jurors that they need not accept the prosecutor's characterization of the evidence. He also instructed them that the government shouldered the burden of proof but had

produced "no specific evidence" to support its theory. The thorough instructions cured any impropriety in the government attorney's closing remarks. *See Ledezma-Hernandez,* 729 F.2d at 314; *United States v. Shackelford,* 709 F.2d 911, 913–14 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 253, 78 L.Ed.2d 239 (1983).

AFFIRMED.

---

6. Responding to objections by Mojica's lawyer, the district court instructed the jury as follows:

MR. MAHER: Your Honor, I'm going to object because he's testifying here as to that van. Now, we don't know any history of that picture that he's put down there. The DEA may have moved that picture—that van and afterwards have taken a picture of it in another place. There is nothing in evidence, whatsoever about that.

THE COURT: You can point that out to the jury. The only thing I remember of the evidence was simply an identification of that being the van. There's no evidence one way or the other about if it was there before or moved or anything of that sort.

MR. MAHER: And could jolly well have been moved by the DEA—

THE COURT: Well, you'll have your time to make your argument, Mr. Maher. That's why I'm giving you time to make your jury argument. You're going to have your opportunity.

. . . . .

MR. MAHER: Your Honor, I'm going to object again. He's talking about an unloading of vehicles next to another vehicle and there's never been any proof whatsoever about the contents of that trailer.

THE COURT: I understood your comments, counsel, not to necessarily be that there was any testimony as to this particular trailer; he was talking to the jury that there was testimony in general, which there was, that as these trucks would get to Dallas, they would be unloaded. Now, the jury is, I think, smart enough to understand the evidence and remember the evidence. I agree with Mr. Maher, there is no particular evidence on August

4th, 1980 incident as to what the placement of the vans was. There was no evidence as to whether that was the way it was from the very beginning or whether they were moved or not moved, so you'll just have to decide; but I think counsel is entitled to summarize and make argument and, Mr. Maher, you will be entitled to counter him.

. . . . .

MR. MAHER: He says that right after the truck came in at six o'clock, and we don't have any evidence of that, and then he says right after that Steve Mojica drove his van over there—

THE COURT: That's what he—that is the argument that he would like the jury to deduce, Mr. Maher.

MR. MAHER: All right, sir, Your Honor.

THE COURT: And you can argue that the jury deduce something else. I agree with you, there is no specific evidence to that effect. It is simply a picture. The picture might have been taken three hours later. We don't know. I will remind the jury, it is the Government's burden of proof. You cannot convict a man on surmise or speculation, but you can draw whatever reasonable—reasonable inferences you feel you want to draw from the evidence. It is up to the attorneys to suggest to you what inferences they think are reasonable. It is up to Mr. Maher, if he will be patient, when his time comes, to suggest to you what inferences he thinks are reasonable, and then you will go out and draw whatever inferences you think are reasonable, and it is your inferences, in the end, that are going to win, not Mr. Maher's, not mine, and not Mr. Rodriguez's; so please, let's go on.