Opinion issued June 18, 2009




 






 




In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00251-CR






JONATHAN LEO GOMEZ, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause No. 1116722






MEMORANDUM OPINION


 A jury convicted appellant, Jonathan Leo Gomez, of capital murder and
assessed his punishment at life in prison without parole. We address appellant's six
points of error, in which he argues that the trial court erred by (1) denying the motion
to suppress appellant's confession, (2) admitting evidence of an unadjudicated
extraneous offense, and (3) denying appellant's request to instruct the jury in
accordance with article 38.22, section 3(a)(2) of the Code of Criminal Procedure. (1) 
We affirm. 

Facts and Procedural History


 Luis Murrillo was found dead in his abandoned and wrecked vehicle on May
5, 2007, in South Houston, near Pasadena, by Detective E. Guzman of the South
Houston Police Department. Murrillo had been shot once in the back of the neck and
had grazing wounds to his face. A nine-millimeter shell casing was found inside the
vehicle. Murrillo's wallet and car stereo were missing. 

 Four days later, on May 9, 2007, Benjamin Mateo and his uncle, Ricardo
Mateo, were walking to La Michocana, a local store in Pasadena, when appellant and
Ricardo Delacruz approached them. Appellant and Delacruz demanded money from
the Mateos. Appellant pointed a handgun at the Mateos, and Benjamin ran. 
Appellant fired at Benjamin five times. Benjamin was shot twice in the back. 
Nine-millimeter shell casings were recovered at the scene. 

 The Mateos were robbed and Benjamin was shot about a mile away from where
police had found Murrillo's body. Because the offense s were committed within close
proximity of each other and because nine-millimeter shell casings were recovered
from both crime scenes, the South Houston and Pasadena police investigators began
a joint investigation with Lieutenant F. Martin of the Texas Rangers, who had been
assisting the South Houston police. By analyzing the casing recovered from
Murrillo's vehicle and comparing it to the casings collected from the shooting of
Benjamin Mateo, police determined that the same gun had fired both casings. 

 On May 12, 2007, three days after he was robbed, Ricardo Mateo saw appellant
and Delacruz in the beer aisle in Food Town, a grocery store near Mateo's home, and
contacted police. Later that same day, police officers who were investigating the
robbery viewed the video surveillance tape at the Food Town store with Mateo. 
Mateo identified appellant and Delacruz from the surveillance tape as the men who
had robbed them and shot Benjamin, Mateo's nephew. Mateo identified appellant as
the shooter.

 After viewing the security videotape, Detective E.R. Rogge and another officer
searched two apartment complexes near Food Town, while another team of officers
searched a different area nearby. About an hour and a half had passed since Mateo
had identified appellant and Delacruz on the Food Town surveillance tape when the
officers saw appellant and Delacruz standing outside an apartment. They were
drinking and smoking cigarettes, and they were wearing the same clothing the officers
had observed shortly before on the surveillance videotape at the Food Town store. 
After the second team of police officers arrived to assist, appellant and Delacruz were
arrested at about 11:15 p.m. They were taken into custody at the Pasadena City Jail
as suspects in the Murrillo homicide and on charges of public consumption, in
violation of a Pasadena city ordinance, and public intoxication. Both men were very
intoxicated. Appellant's speech was slurred, his eyes were bloodshot, he was
unsteady on his feet, and he had an odor of alcohol on his person. He admitted he
was intoxicated.

 Detective Rogge was a 30-year veteran of the Pasadena Police Department
when he investigated the aggravated robbery of Ricardo and Benjamin Mateo and the
shooting of Benjamin Mateo. Rogge prepared a photo lineup that included
appellant's photograph. Both Mateos identified appellant as one of the men who
robbed them and shot Benjamin Mateo. 

 Because appellant was intoxicated when he was arrested, Rogge delayed
interviewing him until the next day to allow appellant time to become sober. On May
13, 2007 at 6:30 p.m., approximately 18 hours after his arrest, Rogge met appellant
in a six-foot square examining room and introduced himself to appellant. Texas
Ranger Lieutenant Martin entered the examining room during the interview to
question appellant about shooting Murrillo. The interview with appellant was audio
and videotaped and played for the jury at trial. 

 The audio and videotape of appellant's questioning is State's Exhibit 3. The
recording shows that Detective Rogge obtained appellant's name, date of birth and
Social Security number and then warned appellant of his statutory rights and obtained
a written waiver of those rights. Without hesitation, appellant began discussing the
aggravated robbery of the Mateos and responded willingly and coherently to
questions posed by Rogge. When appellant finished describing the robbery and
shooting Benjamin Mateo, Detective Rogge asked appellant when else he had used
the gun that he used to shoot Benjamin. Again without hesitation, appellant
proceeded to tell Rogge that he had used it a couple days before the robbery and
began talking about the murder of Murrillo. 

 In the course of the interview, appellant admitted shooting and robbing both
Murrillo and Benjamin Mateo. Appellant shot Murillo three times, and he shot
Benjamin Mateo five times. Having indicated during the interview that he had been
wearing shorts when he shot Murrillo, appellant voluntarily surrendered the shorts to
police officers. A DNA analysis later revealed Murrillo's blood on appellant's shorts. 
Also during the interview, appellant voluntarily submitted to a saliva sampling by
swabs taken from his mouth and to providing hair samples cut and plucked from his
beard, as shown in the videotape. Testimony at trial showed traces of appellant's
DNA on both sets of nine-millimeter shells that police officers recovered from the
scene of both offenses. 

 Appellant filed a motion to suppress to challenge admissibility of his
confession. The trial court conducted a pretrial hearing on the motion pursuant to
Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774 (1964) and Article 38.22, section 6
of the Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art 38.22, §
6 (Vernon 2005). The trial court denied appellant's motion to suppress and later
announced findings of fact and conclusions of law in support of its determination that
appellant's confession was admissible. 

 Appellant also filed a motion in limine to challenge admissibility of evidence
of the unadjudicated extraneous offense of aggravated robbery of Benjamin Mateo
during the capital murder trial. The trial court considered this motion in conjunction
with the motion to suppress and ruled that the challenged evidence was admissible. (2) 
 During the guilt-innocence phase of the trial, Benjamin Mateo testified over
appellant's objections regarding the aggravated robbery incident. The State also
presented to the jury the entire videotape in which appellant admitted shooting
Murrillo. 

Motion to Suppress Confession


 In four points of error, appellant challenges the denial of his motion to suppress
his confession because it was inadmissible. Appellant contends the trial court should
have suppressed the confession because he did not knowingly, intelligently, and
voluntarily waive his rights, as required by Article 38.22, section 3(a)(2) of the Code
of Criminal Procedure, and because his confession violated federal waiver
requirements. Appellant additionally contends that the trial court should have
suppressed the confession because the interrogating officer improperly induced
appellant to confess. 

A. Trial Court's Oral Findings

 The trial court pronounced findings of fact in support of its ruling denying
appellant's motion to suppress. These include the following: (1) appellant expressly
waived his rights when he voluntarily, knowingly and intentionally signed State's
Exhibit No. 2; (2) the totality of the circumstances established that appellant
voluntarily, knowingly, and intentionally waived his rights before making the
statements recorded on the videotape of his interview with Detective Rogge, State's
Exhibit No. 3; (3) appellant did not make his statement as a result of compulsion or
persuasion, but made it voluntarily, knowingly, and intentionally; (4) at no time was
appellant told or prompted what to say; (5) Detective Rogge did not directly or
indirectly promise appellant anything to make his statement; and (6) appellant was
in no way threatened or coerced into making his statement. 

B. Standard of Review 

 When we review a trial court's ruling on a motion to suppress, we defer almost
totally to the court's determinations that center on historical facts and witness
credibility. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). At a
suppression hearing, the trial court is the sole and exclusive trier of fact and judge of
the credibility of witnesses, Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App.
2002), and may choose to believe or to disbelieve all or any part of a witness's
testimony. Ross, 32 S.W.3d at 855. When we review a ruling on the trial court's
application of law to the facts, we view the evidence in the light that most favors the
ruling. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Weaver v. State,
265 S.W.3d 523, 532 (Tex. App.--Houston [1st Dist.] 2008, pet. ref'd).

 For trial-court determinations that do not turn on evaluation of credibility and
demeanor, our review is de novo. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). When, as here, the record shows uncontroverted events and includes a
videotape of the confession, we review de novo how the trial court applied the law
to undisputed facts. Herrera v. State, 194 S.W.3d 656, 658 (Tex. App.--Houston
[14th Dist.] 2006, pet. ref'd); see also Mayes v. State, 8 S.W.3d 354, 358 (Tex. App.
--Amarillo 1999, no pet.) (applying de novo review to trial court's ruling on motion
to suppress because credibility and demeanor were not at issue when facts
surrounding interrogation were videotaped and uncontroverted). 

C. Improper Inducement? 

 In his third point of error appellant challenges denial of his motion to suppress
his confession. Appellant contends his confession was inadmissible because he was
induced to confess by Detective Rogge's statements that he would tell "the judge"
that appellant was cooperative, told the truth, and did not deny anything. The trial
court expressly found that "Detective Rogge did not directly or indirectly promise
[appellant] anything to make his statement" and that "in no way was [appellant]
threatened or coerced into making his statement." Accordingly, the trial court
concluded, as a matter of law, "from the totality of circumstances that [appellant]
voluntarily, knowingly, and intentionally waived his rights before making [the]
statement" that includes his confession, and that the statement was not "the result of
compulsion or persuasion."

 1. Four-Part Test

 The statement of an accused may be used in evidence against him provided it
was "freely and voluntarily made without compulsion or persuasion." Tex. Code
Crim. Proc. Ann. art. 38.21 (Vernon 2005). A confession given by a defendant
under the influence of an improper promise is inadmissible. See Martinez v. State,
127 S.W.3d 792, 794 (Tex. Crim. App. 2004). Under the test stated in Martinez, an
improper inducement will render a confession inadmissible if (1) a promise of some
benefit is made to the accused; (2) the promise is positive and (3) made or sanctioned
by a person in authority, (4) and is of such an influential nature that it would cause
a defendant to speak untruthfully. Id. The truth or falsity of the confession itself is
immaterial; the dispositive inquiry is whether the promise or inducement would likely
lead the accused to inculpate himself falsely. Id. at 794-95.

 2. Discussion

 The State contends that a promise to inform "the judge" that appellant was
truthful is not a promise of a benefit. We agree. Nothing in Detective Rogge's
statements to appellant indicates or suggests how "the judge's" knowledge of
appellant's truthfulness could benefit appellant. See Herrera, 194 S.W.3d at 660
(holding that officer's promise to speak to district attorney to obtain offer for
defendant, although promise of some benefit, was not positive promise of leniency
because officer never claimed authority to make offer, and promise was not of such
influential nature as to cause defendant to speak untruthfully). Any perception of
possible benefit is further defeated by appellant's electing that the jury, and not the
trial court ("the judge"), determine both guilt and punishment. 

 Even if Detective Rogge's words could be construed as a positive promise of
a benefit to appellant, the circumstances of this case do not satisfy the fourth factor
of the Martinez test. Viewed in the light that favors the trial court's ruling, see
Weaver, 265 S.W.3d at 533, the record shows that Rogge made his statements to get
appellant to open up and talk, which he did. For example, when appellant denied
possessing a gun and shooting Benjamin Mateo, Detective Rogge repeated that he
would tell "the judge" that appellant told the truth, was cooperative, and did not deny
anything, whereupon appellant revised his story and admitted possessing a gun and
shooting Benjamin Mateo. Rogge's comments did not suggest any benefit of so
influential a nature as to cause appellant speak untruthfully and thereby invalidate his
confession under Article 38.21. See Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon
2005). 

 Nothing in the record, including appellant's demeanor and his tone of voice in
the audio-videotape recording, suggests that appellant was speaking untruthfully. 
Appellant was calm and cooperated fully during the entire interview. He did not
hesitate to answer, and neither he nor Detective Rogge or Lieutenant Martin ever
raised his voice. Even if appellant believed that a benefit might ensue from telling
the truth, nothing in the record shows or suggests that appellant falsely inculpated
himself. See Weaver, 265 S.W.3d at 535 (holding that officer's stating that defendant
had his "whole life ahead of him" or referring to his drug use were not so influential
as to cause him to speak untruthfully); Espinosa v. State, 899 S.W.2d 359, 362-64
(Tex. App.--Houston [14th Dist.] 1995, pet. ref'd) (rejecting claim of improper
inducement when officers pushed defendant to talk by stating, "Go ahead and tell us
what happened. Everything will be better for you. You will get less time."). 

 We overrule appellant's third point of error.

D. Confession "would be" used in court? 

 In his fourth point of error, appellant claims that the trial court erred by not
suppressing his confession because Rogge's promise to inform "the judge" that
appellant told the truth is equivalent to telling him that his confession would be used
"for him," specifically, to help him, in court. 

 One of the warnings that an accused must receive before his statement is
admissible is that any statement he makes "may" be used against him "in court" and
"at his trial." Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a)(1)-(2) (Vernon 2005). 
If an accused is warned that his statement could be used "for or against him," the
statement is inadmissible because it does not comply with the statutory warning
required by Article 38.22, section 2(a)(1) and is an improper inducement. See
Dinkins v. State, 894 S.W.2d 330, 348 (Tex. Crim. App. 1995); Sterling v. State, 800
S.W.2d 513, 518-19 (Tex. Crim. App. 1990). Appellant contends that the reasoning
of Sterling applies to this case because Detective Rogge's statement that he would tell
"the judge" that appellant told the truth is equivalent to assuring appellant that he
statement would be used "for" him, i.e., on his behalf and is, therefore, per se
inadmissible. We disagree.

 Creager v. State, 952 S.W.2d 852 (Tex. Crim. App. 1997), reaffirmed that
warning an accused that his confession "might be used for him or on his behalf"
renders inadmissible a statement by the accused that is based on that warning. Id. at
855 (citing Gipson v. State, 819 S.W.2d 890 (Tex. App.--Dallas 1991), aff'd, 844
S.W.2d 738 (Tex. Crim. App. 1992)). As Craeger clarified, the per se rule of
admissibility applies only to "a misstatement of the [Article 38.22, section 2(a)(1)]

warning given before interrogation"; it does not apply to "remarks made during
interrogation." Id. at 855 (emphasis added). 

 In Creager, as in this case, there was "no question that the appellant was given
proper warnings before the interrogation." To the extent that an interrogator's
remarks during interrogation might lead a defendant to believe that a confession
would help him, the remarks do "not necessarily render the statement inadmissible." 
Id. Remarks of that type made during interrogation might bear on the voluntariness
of a statement by the defendant, but we determine that issue by considering the
totality of the circumstances under which the statement was obtained, see id., as
explained above. See Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 2005);
Martinez, 127 S.W.3d at 794. As we decided above, Detective Rogge's statement did
not render appellant's confession involuntary under Article 38.21. 

 There is no dispute in this case that appellant received the warnings required
by Article 38.22, section 2(a)(1)-(2) from Detective Rogge before the interrogation
began. The audio and video recording of Rogge's interview of appellant reveals
nothing in these warnings that misstated Article 38.22, section(2)(a)(1)-(2). 
Accordingly, the per se rule of inadmissibility does not apply. See Creager, 952
S.W.2d at 855. 

 We overrule appellant's fourth point of error.

E. Knowing, Intelligent, and Voluntary Waiver of Rights 

 In his first two points of error appellant challenges the admissibility of his
audio and videotaped confession. It is undisputed and appellant acknowledges that
he signed the written waiver of rights presented by Detective Rogge, but contends
that he did not knowingly, intelligently, and voluntarily waive his rights under either
Texas statutory law or federal law. 

 Appellant signed the express waiver-of-rights portion of the form (State's
Exhibit 2) that Detective Rogge handed to him after reading the statutory warnings
from the Harris County "blue card," which tracks Article 38.22. It is undisputed that
Rogge stopped, after reading each warning, to make eye contact with appellant and
to ask if appellant understood the right conveyed, and also undisputed that appellant
replied each time that he understood. Appellant's responses were clear and
unequivocal. It is likewise undisputed that, after receiving the warnings and signing
State's Exhibit 2, appellant did not stop the interview at any time, either with Rogge
or with Lieutenant Martin. In addition, appellant did not request a lawyer at any time,
and did not remain silent, but answered readily and participated voluntarily and
cooperatively. 

 1. Waiver of rights under Texas law 

 An oral statement of an accused made as a result of custodial interrogation is
admissible against the accused in a criminal proceeding if: (1) an electronic
recording, which includes a videotape, is made of the statement; (2) before the
statement, but during the recording, the accused is given the warnings required by
article 38.22, section 2(a) of the Code of Criminal Procedure; and (3) the accused
knowingly, intelligently, and voluntarily waives the rights conveyed by the warning. 
Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a) (Vernon 2005). Appellant limits his
challenge to the third element.

 a. Express Waiver

 Appellant challenges the trial court's ruling and supporting findings that he
expressly waived his rights. Though he signed the waiver-of-rights section of the
form presented to him by Detective Rogge, appellant argues that he did not make the
waiver knowingly, intelligently, or voluntarily. 

 The trial court expressly found that

 [T]he words ["]waiver of rights["] appear[] just beneath [appellant's]
signature[,] which is about midway of the page, that the words ["]waiver
of rights[" are] less than an inch below [appellant's] signature. The
Court also finds that the words ["]waiver of rights[" appear] on State's
Exhibit 2 in all capital letters, in bold print; and the Court finds that the
font used to print the ["]waiver of rights["] on State's Exhibit 2 is larger
than the font used [in] the body of . . . State's Exhibit 2 with the
exception of the word "warning[,]" which appears near the top of the
page. 


 Appellant challenges the trial court's findings and conclusion of express waiver
by emphasizing that Rogge (1) did not verbally ask if appellant wished to waive the
rights just read aloud; (2) did not allow appellant time to read the waiver paragraph
on the warning form, State's Exhibit 2, before asking him to sign the form, and (3)
did not read aloud to appellant the waiver paragraph on the warning form. Appellant
provides no authority, however, that requires any of these. 

 Appellant also claims that he did not read the waiver paragraph because he has
only a fifth-grade education and did not have his eyeglasses. (3) Far more limited
mental capacity, however, has not rendered a waiver of rights involuntary. See, e.g.,
Penry v. State, 903 S.W.2d 715, 745-46 (Tex. Crim. App. 1995) (upholding
voluntariness of confession obtained from appellant whose IQ ranged from 40's to
70's and who could not read or write). Extent of mental capacity is but one factor,
moreover, of the totality of the circumstances, which is the same standard that
determines voluntariness of a confession. Delao v. State, 235 S.W.3d 235, 241 (Tex.
Crim. App. 2007). As Delao confirms, the totality-of-the-circumstances standard
applies equally to persons of all levels of mental capacity. Id. 

 Additionally, though appellant mentioned not having his eyeglasses to
Detective Rogge, he did not state that he needed them to read, did not ask for them
before signing the warnings and waiver form, State's Exhibit 2, and did not ask that
any portion of the form be read to him. As the trial court noted in finding an express
waiver, the words "waiver of rights" are located immediately below appellant's first
signature on the form; likewise, the "warning" and "waiver of rights" headings appear
in larger font and in bold, and the contents of the waiver of rights portion of the form
appear in larger font. We note further that appellant signed the form without
hesitation and, in addition, that his signature on both sections of the form is written
precisely on the lines provided and that it is clear, legible, and in a script with evenly
spaced letters. The audio and videotape further demonstrates appellant's awareness
and attentiveness to the processes of the interview with Detective Rogge, to the extent
that he corrected Rogge about a detail at one point, and thus supports the trial court's
express-waiver findings. 

 Based on the record before us, we cannot say that the trial court erred by
determining, from the totality of the circumstances, that appellant expressly waived,
in writing, the rights afforded to him by Article 38.22, section 2(a), as conveyed to
appellant by Detective Rogge by signing State's Exhibit 2. 

 b. Implied Waiver

 Appellant also challenges the trial court's determination, "from the totality of
circumstances," that appellant impliedly waived his Article 38.22 rights before
making the statement recorded in the audio and videotape. Article 38.22 does not
require an express verbal statement from the accused that he waives his rights before
giving a statement. Rocha v. State, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000) (citing
Etheridge v. State, 903 S.W.2d 1, 16 (Tex. Crim. App. 1994) (citing Barefield v.
State, 784 S.W.2d 38, 40-41 (Tex. Crim. App. 1989), overruled on other grounds
by Zimmerman v. State, 860 S.W.2d 89, 94 (Tex. Crim. App. 1993)). The reviewing
court may determine that the accused impliedly waived his rights and voluntarily
confessed by examining the totality of the circumstances demonstrated by the record. 
E.g., Barefield, 784 S.W.2d at 41.

 The audio and videotape in this case and Detective Rogge's testimony at the
hearing on the motion to suppress establish that Rogge properly advised appellant of
his Article 38.22, section 2(a) rights. After reciting each right, Rogge stopped to
engage appellant and ask if he understood the particular right. Appellant responded
"yes" in every instance. Appellant then proceeded to answer Rogge's questions and
also answered Lieutenant Martin's questions. Appellant never attempted to stop the
questioning, never remained silent when faced with a question, and never asked to
speak with a lawyer. Appellant was attentive to the questioning and even corrected
Rogge when he incorrectly stated a date. 

 For these reasons demonstrated by the record before us, we cannot say that the
trial court erred by determining, from the totality of the circumstances, that appellant
impliedly waived the rights afforded to him by Article 38.22, section 2(a), as
conveyed to appellant by Detective Rogge. 

 2. Waiver of rights under Federal Law 

 The result is the same under a federal constitutional analysis. A confession is
admissible under federal waiver requirements if the record establishes that the
defendant was informed of his Miranda (4) rights and that his waiver and subsequent
confession were the "product of a free and deliberate choice." United States v.
Collins, 40 F.3d 95, 98 (5th Cir. 1994) (quoting Moran v. Burdine, 475 U.S. 412,
421, 106 S. Ct. 1135, 1140-41 (1986)). As under Texas law, waiver may be direct,
or, in some instances, may be clearly inferred from the actions and words of the
person interrogated. See id. (quoting North Carolina v. Butler, 441 U.S. 369, 373,
99 S. Ct. 1755, 1757 (1979)). Accordingly, any lack of an express waiver by
appellant does not, in and of itself, render his oral confession inadmissible. See
Turner v. State, 252 S.W.3d 571, 584 (Tex. App.--Houston [14th Dist.] 2008, pet.
ref'd) (citing Faulkner v. State, 727 S.W.2d 793, 797 (Tex. App.--Houston [1st Dist.]
1987, pet. ref'd) (citing Harville v. State, 591 S.W.2d 864, 866 (Tex. Crim. App.
1979)). As under Texas law, waiver is determined based on the totality of the
circumstances. Id. 

 As addressed above, the totality of the circumstances demonstrates a valid
waiver of rights and, therefore, a confession that is the "product of a free and
deliberate choice." See Collins, 40 F.3d at 98. (5)

 We overrule appellant's second point of error. 

"Voluntariness" Charge to the Jury


 In his sixth point of error, appellant argues that the trial court erred by refusing
appellant's requested instruction to the jury regarding the voluntariness of his
confession. Appellant's requested instruction would have effectively required the
jury to determine the same issue previously determined by the trial court when it
denied appellant's motion to suppress, specifically, whether appellant knowingly,
intelligently, and voluntarily waived his Article 38.22 rights. Despite refusing
appellant's requested instruction, however, the trial court sua sponte included the
general "voluntariness" instruction recognized by Article 38.22 of the Code of
Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon 2005). 
Appellant acknowledges this action by the trial court, but contends the instruction did
not sufficiently permit the jury to decide whether appellant knowingly, intelligently,
and voluntarily waived his rights during the recording of his statement. We disagree.

 The Code of Criminal Procedure recognizes three possible jury instructions
regarding the taking of confessions, as follows: (1) a "general" Article 38.22, § 6
voluntariness instruction; (2) a "general" Article 38.22, § 7 instruction for warnings
made to a defendant pursuant to sections 2 and 3 of Article 38.22; and (3) a "specific"
Article 38.23(a) exclusionary-rule instruction, which is not at issue here. See
Oursbourn v. State, 259 S.W.3d 159, 173 (Tex. Crim. App. 2008). Appellant
requested the Article 38.22, section 7 instruction in this case, but the trial court
instructed the jury in accordance with Article 38.22, section 6. 

A. The "General" Article 38.22 Section 6 Voluntariness Instruction

 Article 38.22, section 6 provides,

 In all cases where a question is raised as to the voluntariness of a
statement of an accused, the court must make an independent finding in
the absence of the jury as to whether the statement was made under
voluntary conditions. If the statement has been found to have been
voluntarily made and held admissible as a matter of law and fact by the
court in a hearing in the absence of the jury, the court must enter an
order stating its conclusion as to whether or not the statement was
voluntarily made, along with the specific finding of facts upon which the
conclusion was based, which order shall be filed among the papers of
the cause. Such order shall not be exhibited to the jury nor the finding
thereof made known to the jury in any manner. Upon the finding by the
judge as a matter of law and fact that the statement was voluntarily
made, evidence pertaining to such matter may be submitted to the jury
and it shall be instructed that unless the jury believes beyond a
reasonable doubt that the statement was voluntarily made, the jury shall
not consider such statement for any purpose nor any evidence obtained
as a result thereof.


Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon 2005) (emphasis added). The
trial court's instruction to the jury tracked Article 38.22, section 6, as follows:

 You are instructed that a statement of an accused may be used in
evidence against him if it appears that the same was freely and
voluntarily made without compulsion of persuasion.


 Therefore, unless you believe from the evidence beyond a
reasonable doubt that the alleged statement into evidence was freely and
voluntarily made by the defendant without compulsion or persuasion, or
if you have a reasonable doubt thereof, you shall not consider such
alleged statement for any purpose nor any evidence obtained as a result
thereof. 


 A "general" section 6 voluntariness instruction is proper when a question is
raised by the evidence as to the voluntariness of a statement made by the defendant. 
Oursbourn, 259 S.W.3d at 175 (citing Tex. Code Crim. Proc. Ann. art. 38.22, § 6). 
A question is "raised" when voluntariness is litigated in some manner at trial. Id. at
176. Based on the trial court's having sua sponte decided to include the Article 38.22
Section 6 voluntariness instruction in the charge, we may infer that the trial court
decided that voluntariness was litigated in this case, through responses by Detective
Rogge to appellant's counsel's cross-examination. 

B. The General Article 38.22 Section 7 Warnings Instruction

 The trial court refused appellant's request to instruct the jury in accordance
with Article 38.22, section 7 which provides, 

 When the issue is raised by the evidence, the trial judge shall
appropriately instruct the jury, generally, on the law pertaining to such
statement. 


Tex. Code Crim. Proc. Ann. art. 38.22, § 7 (Vernon 2005). 

 A Section 7 warning instruction details all of the requirements of Article 38.22
Section 2 or 3 and asks the jury to decide whether those requirements were satisfied
in the particular case. Oursbourn, 259 S.W.3d at 173. An Article 38.22, section 7
instruction is warranted only in certain situations, however. See Id. at 174. The
defendant is entitled to a Section 7 instruction when "the issue is raised by the
evidence" at trial. Id. at 176. In contrast to the section 6 instruction, "the issue"
raised is different and concerns not voluntariness per se, but compliance with the
statutory warnings required by sections 2 and 3 of Article 38.22 that affect
voluntariness. See id. at 175-76. To be "raised by the evidence" there must be a
genuine factual dispute, just as is true under Article 38.23. Id. A genuine factual
dispute occurs when the defendant offers evidence that would create a reasonable
doubt as to a specific factual matter that relates to compliance with the statutory
warnings of sections 2 or 3 of Article 38.22 and is, therefore, essential to the
voluntariness of the statement. See id. at 177. When there is no disputed factual
issue, the legality of compliance with the statutory warnings regarding the statement
is determined by the trial court alone, and a Section 7 instruction is not required. Id.
at 177-78.

C. Discussion

 Appellant contends he was entitled to a section 7 warning instruction because
the evidence was disputed regarding whether he knowingly, intelligently and
voluntarily waived his rights. Appellant relies on testimony by Detective Rogge who
conceded, under cross-examination, that he neither asked appellant directly whether
he wanted to waive his rights, nor read the waiver paragraph of the warning to
appellant, and, in addition, stated that he did not believe that appellant read the
waiver paragraph before he signed it and acknowledged that he told appellant that the
form contained "exactly what I just told you." 

 This testimony by Detective Rogge does not create a genuine factual dispute
regarding compliance with the requirements of sections 2 or 3 or Article 38.22 and,
therefore, did trigger a section 7 instruction in the jury charge. We note first that a
genuine factual dispute may derive only from affirmative evidence and not by
responses to mere cross-examination questions, on which appellant relies here. See
Oursbourn, 259 S.W.3d at 177. Oursbourn further clarifies that mere argument does
not suffice to create a fact issue that would require a section 7 instruction to the jury. 
See id. Accordingly, mere "implication by counsel" that appellant did not knowingly,
intelligently, and voluntarily waive his rights would not raise a disputed fact issue. 
Id. 

 Second, the testimony by Detective Rogge does not give rise to a dispute
regarding a specific factual matter that is essential to the voluntariness of the
statement in that it relates to compliance with a specific warning that is statutorily
required by section 2 or 3 of Article 38.22. See id. at 177; see also Tex. Code Crim.
Proc. Ann. art. 38.22, §§ 2, 3 (Vernon 2005) (listing warning requirements). 
Nothing in Article 38.22 requires that a waiver of rights be expressly made. See
Rocha v. State, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000) (stating that express waiver
of rights is not essential to knowing, intelligent, and voluntary waiver of rights under
Article 38.22). 

 Detective Rogge's cross-examination testimony addresses only the
circumstances surrounding appellant's signing the waiver, none of which relates to
any of the rights afforded by sections 2 and 3 of Article 38.22. The only possible
inference under the record presented, therefore, is that the trial court determined that
Detective Rogge's testimony gave rise to a factual dispute as to the voluntariness of
appellant's waiver, a matter governed by section 6 of Article 38.22, rather than a
factual dispute about the warnings provided to appellant, a matter governed by
section 7 of Article 38.22, and which the trial court had previously resolved by its
ruling on appellant's motion to suppress. Accordingly, we hold that the trial court did
not err by denying the Article 38.22 Section 7 waiver instruction. 

 We overrule appellant's sixth point of error.

Extraneous Offense Evidence 

 In his fifth point of error, appellant argues that the trial court violated Rules of
Evidence 402, 404(b), and 403 by admitting extraneous offense evidence of the
aggravated robbery of Benjamin and Ricardo Mateo. The State sought to introduce
the extraneous aggravated robbery evidence to prove appellant's intent to kill Luis
Murrillo. Appellant sought to exclude evidence of the aggravated robbery on the
grounds that it was irrelevant, that it was improper evidence of character conformity,
and that the danger of unfair prejudice substantially outweighed its probative value,
see Tex. R. Evid. 402, 403, 404(b), and that permitting the evidence effectively
permitted the State to "open the door for its own rebuttal." See Roberts v. State, 29
S.W.3d 596, 600 (Tex. App.--Houston [1st Dist.] 2000, pet. denied).

 Before the State called Detective Rogge in the second trial, appellant objected
to the extraneous evidence that the witness would provide for the same reasons
objected on during the first trial. In his objection during the first trial, the trial court
asked appellant, "is it the defendant's position that the defense does not now or ever
intend to raise intent to shoot or intent to kill as an issue?" In response, appellant
stated that "our opinion is the only issue in the case is intent to kill." The trial court
again asked whether "the intent to kill is a contested issue in this case." Again,
appellant responded, "That is our only issue we have. For a third time, the trial court
asked, "intent to kill is a contested issue in this case, correct?" Appellant responded
for the third time, "I agree with that." The trial court then ruled to allow the
extraneous evidence to be included to rebut appellant's "only issue"- the defensive
theory that he did not intend to kill Murrillo. 

 Apparently reconsidering his position, appellants's counsel pointed out to the
trial court that the "defense team in this trial did not present, have not, don't intend
to present any evidence regarding specific intent to kill." Yet, when the trial court
responded by stating that "that's one of the reasons I inquired whether or not that was
going to be raised as an issue by the defense," appellant again replied that intent was
"probably the only issue that we're going to ask [the jury] to focus on." We note
further that in his earlier opening statement to the jury, appellant's counsel
emphasized that "there is no specific intent evidence" to prove capital murder. While the trial court allowed the extraneous evidence to be included, it also
included the following instruction in the charge to the jury:

 You are further instructed that if there is any evidence before you
in this case regarding the defendant's committing an alleged offense or
offenses other than the offense alleged against him in this case, you
cannot consider such evidence for any purpose unless you find and
believe beyond a reasonable doubt that the defendant committed such
other offense or offenses, if any, and even then you may only consider
the same in determining the intent of the defendant, if any, in connection
with the offense, if any, alleged against him in the indictment and for no
other purpose.


A. Standard of Review

 We review the trial court's decision to admit extraneous offense evidence for
abuse of discretion. Rankin v. State, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996);
Roberts, 29 S.W.3d at 600. A trial court does not abuse its discretion as long as its
decision to admit evidence is within the "zone of reasonable disagreement."
Montgomery v. State, 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1990); Roberts, 29
S.W.3d at 600. We will sustain the decision if it is correct on any theory of law
applicable to the case. Romero v. State, 800 S.W.2d 539, 543-44 (Tex. Crim. App.
1990).
B. Relevancy

 Evidence of extraneous offenses is not admissible at the guilt-innocence phase
of a trial to prove that a defendant committed the charged offense in conformity with
a bad character. Tex. R. Evid. 404(b); See Nobles v. State, 843 S.W.2d 503, 514
(Tex. Crim. App. 1992). As appellant recognizes, however, extraneous offense
evidence may be admissible when it has relevance beyond character conformity, for
example, to show proof of motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident. Moses v. State, 105 S.W.3d 622, 626
(Tex. Crim. App. 2003). 

 Extraneous offense evidence may become admissible to help prove intent only
if the intent required for a conviction for the primary offense is a contested issue in
the case. McGee v. State, 725 S.W.2d 362, 364 (Tex. App.--Houston [14th Dist.]
1987, no pet.). Thus, rebuttal of a defensive theory claiming lack of intent is one of
the permissible purposes for which extraneous offense evidence may be admitted. 
See id.; Moses, 105 S.W.3d at 626. Intent may properly be characterized as a
contested issue if (1) the required intent for the primary offense cannot be inferred
from the act itself or (2) the accused presents evidence to rebut an inference that the
required intent existed. McGee, 725 S.W.2d at 364. Intent is most clearly placed in
issue when the defendant argues that the charged offense was unintentional, as here,
or the result of an accident. See Johnson v. State, 932 S.W.2d 296, 302 (Tex.
App.--Austin 1996, pet. ref'd). 

 We agree with the trial court that appellant placed his intent at issue by both
telling the jury that he lacked the requisite intent and by telling the trial court four
times that intent was the only contested issue in the case. As a result, we find that
there was no "prompting or maneuvering" by the State and that the State did not
"open the door for its own rebuttal." See Roberts, 29 S.W.3d at 600-01. The
defensive claims that appellant raised by his statements placed the intent element of
appellant's capital murder offense at issue, which entitled the State to rebut
appellant's claimed lack of intent with evidence of appellant's unadjudicated
extraneous offense of the aggravated robbery of the Mateos. See Johnson, 932
S.W.2d at 302. Therefore, the trial court did not violate Rule of Evidence 404(b) by
allowing the State to introduce evidence of the aggravated robbery to prove
appellant's intent to kill Murrillo. 
C. Unduly Prejudicial

 Relevant extraneous evidence may still be excluded if the probative value of
the evidence is substantially outweighed by the danger of unfair prejudice. Tex. R.
Evid. 403; Moses, 105 S.W.3d at 626. As emphasized most recently in Moses,
however, our review of the trial court's rule 403 determinations is highly deferential. 
 The appellate court should not conduct a de novo review of the record
with a view to making a wholly independent judgment whether the
probative value of evidence of "other crimes, wrongs, or acts" is
substantially outweighed by the danger of unfair prejudice. It should
reverse the judgment of the trial court "rarely and only after a clear
abuse of discretion."


Id. at 627 (citing Montgomery, 810 S.W.2d at 392) (citing United States v. Maggitt,
784 F.2d 590, 597 (5th Cir.1986)). 

 Trial courts should consider the following factors under a rule 403 analysis: (1)
the strength of the extraneous offense evidence to make a fact of consequence more
or less probable; (2) the potential of the extraneous offense to impress the jury in
some irrational but indelible way; (3) the time during trial that the State requires to
develop evidence of the extraneous misconduct; and (4) the need by the state for the
extraneous evidence. Cf., Wheeler v. State, 67 S.W.3d 879, 888 (Tex. Crim. App.
2002). 

 The trial court ruled that the extraneous evidence proffered by the State has
inherent probative value. The extraneous offense occurred four days after the
charged offense and is strongly compelling evidence tending to prove intent. Given
the specific instructions provided to the jury twice that they were only to use the
extraneous evidence in consideration of appellant's intent in the death of Murrillo,
it did not impress the jury in some irrational way. The trial court also found that the
time required to prove the extraneous offense was relatively limited given the close
connection between the extraneous and charged offenses. Lastly, given the fact that
intent was the only contested issue in the case, the trial court found that the State had
a great need to present the extraneous evidence to rebut the claim of lack of intent. 
 Nothing in the record before us demonstrates that the trial court clearly abused
its discretion by admitting the extraneous offense evidence. The extraneous evidence
has strong probative value in determining intent, which, according to appellant, was
the only contested issue in the case. Further, given the precautionary instructions
provided by the trial court, the prejudicial effect of the evidence is limited. Appellant
has not shown that the verdict was unduly prejudiced by the extraneous offense
evidence. Therefore, the trial court did not abuse its discretion by including evidence
of the extraneous aggravated assault. 

 We overrule appellant's fifth point of error.








Conclusion


 We affirm the judgment of the trial court.



 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Hanks.


Do not publish. Tex. R. App. P. 47.2(b).


1. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(2) (Vernon 2005).
2. The hearings on these motions took place in February 2008, before appellant's first
trial, which ended in a mistrial when the jurors became deadlocked. The State and
appellant relied on the trial court's earlier rulings in this trial, which took place in
March 2008.
3. Appellant replied that he had finished fifth grade when Detective Rogge asked how
far he had gone in school. When Rogge handed the warning form to appellant for
signature, appellant mentioned that he did not have his eyeglasses. 
4. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). Appellant does not dispute
that Miranda affords the same protections as Article 38.22 of the Code of Criminal
Procedure, with the exception that Article 38.22, section 2(a)(5) affords the additional
right to terminate the interview at any time. See Tex. Code Crim. Proc. Ann. art.
38.22 §2(a) (5) (Vernon 2005).
5. We disagree that United States v. Ledezma Hernandez, 729 F.2d 310 (5th Cir. 1984),
compels a different analysis and result. In Ledezma Hernandez, the United States
Court of Appeals for the Fifth Circuit recognized that the defendant continued to
answer questions posed by investigators after receiving his Miranda rights, but
nonetheless held that he did not impliedly waive those rights by continuing to answer. 
Id. at 313. The reason, which does not apply here, is that defendant requested counsel
at some point after he received his Miranda warnings. Id. Having invoked his right
to counsel, the defendant did not waive his rights by continuing to answer. See id. 
In this case, appellant never invoked his right to counsel or any other Miranda right
after receiving his warnings that he could invoke them, and therefore waived them by
continuing to answer questioning.